C. E. HASSELL, S. C. Hassell, and Carrie Hassell, Plaintiffs in Error,

v.

TEXACO, INC., a Corporation, Defendant in Error.

No. 39553.

Supreme Court of Oklahoma.

June 5, 1962.

Harold Charney, Owasso, for plaintiffs in error.

Philip R. Wimbish, Elmer W. Adams, Tulsa, for defendant in error.

IRWIN, Justice.

On April 18, 1960, Texaco Inc., a corporation obtained a default judgment against defendants, C. E. Hassell, S. C. Hassell, and Carrie Hassell. In that judgment the trial court found, inter alia, that Texaco was the owner and operator of a valid and subsisting oil and gas lease covering the NE¼ of NE¼ of Sec. 18, Twp. 21 N., Rge. 13 E., Tulsa County.

On August 16, 1960, the above defendants filed their petition to vacate the judgment rendered in April 18, 1960. In their answer and cross-petition they denied that Texaco had a valid and subsisting oil and gas lease and alleged that Texaco's lessors had no interest in the minerals for the reason that "defendant Carrie Hassell has been in the open, adverse, actual and notorious possession of the mineral on said property for a period of 17 years and that the said Carrie Hassell took possession of said minerals and produced same from said property for a period of more than seventeen years, thereby obtaining title to said minerals by prescription and adverse possession". It was further alleged that the defendant Carrie Hassell is the owner of the fee simple title to the NE¼ of NE¼ of Sec. 18, Twp. 21 N., Rge. 13 E., Tulsa County.

On trial of the case and at the conclusion of defendants' evidence, the trial court sustained plaintiff's demurrer to the evidence and denied defendants' petition to vacate. Defendants perfected the present appeal.

The basis for defendants' allegations that defendant Carrie Hassell obtained title to the minerals by prescription and adverse possession is that she took over the production of the gas well in 1943, and had adversely held possession of the minerals continually for seventeen years; and that she mined and produced gas for commercial purposes, to wit: the production of income from the operation of her farm; that the production thereof was inconsistent with the rights of the true mineral owners and was open, visible, notorious and hostile.

FACTS.

The evidence discloses that a departmental oil and gas lease was executed which covered the minerals in question in 1906. Production was had and the lease was in force and effect until 1943, when the nine wells on the lease were abandoned. The Hassells had moved upon the property in 1932, and connected with a gas line belonging to Texaco which ran across the land and the gas was used in the Hassell home. The gas so used was from wells which are not located on the tract involved.

In 1938, Hopping Investment Company, which owned the fee simple title to the tract in question, subject however to the departmental oil and gas lease of 1906, conveyed the surface thereof to T. J. Hassell, from whom defendants deraign their title. Hopping Investment Company reserved all the minerals in the deed to T. J. Hassell in 1938. The successors to all the mineral rights reserved by Hopping Investment Company in the 1938 deed, executed oil and gas leases to Texaco in 1956 and 1957.

In 1943, the Hassells made a pipe connection with one of the abandoned gas

wells which had not been plugged and used gas near a minnow pond. Later on they ran the gas line to the brooder house to keep it warm. In 1944, the gas line was connected with the house. Except for a short period in 1944, gas for the home was used from this well and also from the connection with Texaco which was supplying gas from wells located on other tracts. Within the past two years, the gas line which was connected with the abandoned well was connected with the Hassells' hot house.

The only gas or minerals appropriated by the Hassells from this tract was from this one gas well. Nothing was done to increase the flow; the well was not cleaned out and no new or additional equipment was placed in the well. No gas was sold or used off the premises. No reports were made to the Corporation Commission or the Tax Commission showing that any gas was being removed. There is no showing that the mineral owners had any notice that defendants were using the gas and the evidence is rather vague as to whether it could be observed from a casual inspection that a connection had been made with the gas well.

## CONCLUSIONS.

■ Where there is a severance of the mineral estate from the surface estate the owner of the minerals does not lose his right or his possession by any length of non-user, nor can the owner of the surface acquire title by prescription to the minerals by his continued occupancy of the surface. See Churchill v. Muegge, (Okl.), 323 P.2d 339.

Where the ownership of the surface and of the mineral rights has been severed, the only way the Statute of Limitations can be asserted against the owner of the mineral rights or estate is for the owner of the surface estate or some other person to take actual possession of the minerals by opening and operating mines for the statutory period. See Strickland v. Reeburgh, (Okl.), 362 P.2d 1110.

■ In order to make a holding adverse to one who has reserved all mineral rights and the right to enter thereon for the purpose of extracting the same, there must appear to have been some denial of his right, or some assertion of a claim inconsistent with his right, which does not necessarily appear where a person uses the land merely for agricultural purposes, as such use is entirely consistent with the right of another to prospect for oil and gas under the soil. See Deruy v. Noah, 199 Okl. 230, 185 P.2d 189.

■ Adverse possession must be open, visible, continuous and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any claim of others, but against all titles and claimants. See Liles v. Smith, 206 Okl. 458, 244 P.2d 582.

■ The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but may be made out only by clear and positive proof, with every presumption in favor of possession in subordination to the title of the true owner. See Coats v. Riley, 154 Okl. 291, 7 P.2d 644.

■ An application to vacate a judgment is addressed to the sound legal discretion of the trial court and the order made thereon will not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion. See Jaggers v. Hobbs, 198 Okl. 181, 176 P.2d 828.

■ In the instant action the mineral estate had been severed from the surface estate. Although the owners of the surface may have used some gas from the abandoned well, there was no showing whatsoever of any development. The gas was not used for commercial purposes but used incidentally for domestic purposes, which was no more than a continuation of the permissive use as provided in the lease of 1906. No records were ever filed with the Corporation Commission or the Tax Commission that would indicate the gas was

being produced. There is nothing to indicate that the defendants intended to take possession of the minerals, or to assert a denial of the true owners rights, or a claim to the minerals which was inconsistent with the true owners rights. Neither is there any evidence which would indicate that the defendants used more gas than would have escaped had the abandoned well been left open.

From an examination of all the evidence we can not conclude that it clearly appears that the trial court abused its discretion in sustaining Texaco's demurrer to defendants' evidence and denying defendants to vacate the judgment rendered on April 18, 1960

Judgment affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH. HALLEY, JOHNSON and BERRY, JJ., concur.