2012 OK 22

**CPT ASSET BACKED CERTIFICATES, SERIES 2004–EC1, Plaintiff/Appellee,**

v.

**CIN KHAM and Ngul Liam Cing, Defendants/Appellants.**

No. 108,384.

Supreme Court of Oklahoma.

March 6, 2012.

Rehearing Denied May 7, 2012.

was not required under Sixth Amendment right to trial by competent and unimpaired juries").

Phillip Aaron Taylor, Taylor & Associates, Broken Arrow, Oklahoma, for Appellants.

Steven A. Heath, Baer, Timberlake, Coulson & Cates, Tulsa, Oklahoma, for Appellee.

COMBS, J.

### FACTUAL AND PROCEDURAL HISTORY

¶ 1 On August 27, 2004, the appellants, Cin Kham and Ngul Liam Cing (Appellants), executed an adjustable rate note in favor of Encore Credit Corporation, a California Corporation (Encore). Contemporaneously, the Appellants executed a mortgage to secure the note. The mortgage names Mortgage Electronic Registration Systems, Inc. (MERS), as the mortgagee and further states "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." Encore is identified as the Lender in this mortgage.

¶ 2 On or about November 1, 2008, Appellants defaulted on the note. Appellee, CPT Asset Backed Certificates, Series 2004–EC1, by the Bank of New York Mellon, a New York Banking Corporation, as Trustee under the Pooling and Servicing Agreement dated as of November 1, 2004 (Appellee), filed a foreclosure petition on May 11, 2009. Appellants failed to answer the petition and a default judgment was entered against them on July 31, 2009. A hearing to confirm the sale was set for March 9, 2010. On March 9, 2010, Appellants filed a Petition and Motion to Vacate challenging Appellee's standing to

foreclose on the subject property.[1] On May 5, 2010, the trial court denied Appellants' petition to vacate judgment but granted leave to file a writ of prohibition.[2] Appellants filed an application to assume original jurisdiction and petition for writ of prohibition in this Court on June 3, 2010. This proceeding was recast as an appeal on October 26, 2010. A petition in error was filed on November 11, 2010, and a second amended petition in error was filed on December 22, 2010.

## STANDARD OF REVIEW

¶3 The standard of review for a trial court's ruling either vacating or refusing to vacate a judgment is abuse of discretion. *Ferguson Enterprises, Inc. v. Webb Enterprises, Inc.*, 2000 OK 78, ¶5, 13 P.3d 480, 482; *Hassell v. Texaco, Inc.*, 1962 OK 136, 372 P.2d 233. A clear abuse-of-discretion standard includes appellate review of both fact and law issues. *Christian v. Gray*, 2003 OK 10, ¶43, 65 P.3d 591, 608. An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law, or where there is no rational basis in evidence for the ruling. *Fent v. Oklahoma Natural Gas Co.*, 2001 OK 35, ¶12, 27 P.3d 477, 481.

## MERS BACKGROUND

¶4 Mortgage Electronic Registration Systems, Inc., is "a private corporation that administers the MERS system, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans." *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking & Fin.*, 270 Neb. 529, 704 N.W.2d 784, 785 (2005). "In 1993, the MERS system was created by several large participants in the real estate mortgage industry." *Matter of MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 828 N.Y.S.2d 266, 861 N.E.2d 81, 83 (2006). "Although at first **MERS** was only able to attract the participation of Fannie Mae and Freddie Mac, private label subprime mortgage securitizers began using **MERS** in 1999." (emphasis original)[3] Today, "[o]ver half the nation's mortgage loans are now recorded under MERS name."[4] ". . . MERS is legally involved in the origination of approximately 60% of all mortgage loans in the United States."[5] MERS's "mission is to register every mortgage loan in the United States on the MERS System."[6]

¶5 Any explanation or description of the MERS system must begin with an understanding of traditional mortgage lending and the American real property recording systems. "Public land title records have been a fundamental feature of American law since the founding of the Republic."[7] They have been adopted in all fifty states and an analogous recording system has been adopted for personal property interests under Article 9 of the Uniform Commercial Code (UCC). "The early colonial objective of these laws was, as it is today, to prevent disputes over property rights and to facilitate the use of land as collateral by creating a transparent public record that provides certainty in private bargains."[8]

1. Petition and Motion to Vacate Journal Final Entry of Judgment (by default) entered July 31, 2009) *sic*, and Brief and Affidavit in Support Thereof, and Motion for Order Suspending All Execution Proceedings Including Confirmation of Sheriff's Sale Set for Hearing on March 9, 2010, or, Alternatively, Request for Leave of Court to File Application to Assume Original Jurisdiction and Petition for Writ of Prohibition in the Oklahoma Supreme Court (Based Upon Plaintiff's Lack of Standing).

2. This order was later memorialized and filed on December 21, 2010. This Court, on November 30, 2010, ordered Appellants to file a second amended petition in error and attach this memorialized order of the Tulsa County District Court.

3. Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L.Rev. 1359, 1370 (2010).

4. John R. Hooge & Laurie Williams, *Mortgage Electronic Registration Systems, Inc.: A Survey of Cases Discussing MERS' Authority to Act*, Norton Bankr.L. Adviser, Aug. 2010 at 1, 21.

5. Peterson, *supra*, at 1362.

6. MERS web page overview.

7. Peterson, *supra* at 1363.

8. Peterson, *supra* at 1364–1365.

¶ 6 In traditional mortgage lending, mortgages were recorded in the public land records so that mortgagees would not "risk losing the ability to enforce their contract as against a subsequent purchaser for value."[9] Any transfer of the Lender's rights was accomplished through the process of assignment and recorded in the public record.

¶ 7 The legal foundation of traditional mortgage lending is the longstanding rule that the mortgage follows the note. "Courts are virtually unanimous in holding that where a mortgage lender with a promissory note negotiates that note to a holder, the holder of the promissory note also obtains any mortgage securing that note."[10] Over one hundred years ago, the United States Supreme Court held: "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Carpenter v. Longan,* 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872).

¶ 8 Oklahoma law is in accord. "In Oklahoma, ownership of the note is controlling, and assignment of the note carries with it assignment of the mortgage. ... An assignment of the mortgage to one other than the holder of the note is of no effect." *BAC Home Loans Serv'g, L.P. v. White,* 2011 OK CIV APP 35, ¶ 10, 256 P.3d 1014, 1017, citing *Gill v. First Nat. Bank & Trust Co. of Oklahoma City,* 1945 OK 181, 159 P.2d 717, 719. "A mortgage securing the payment of a negotiable note is merely an incident and accessory to the note, and partakes of its negotiability. The indorsement and delivery of the note carries with it the mortgage without any formal assignment thereof." *Chase v. Commerce Trust Co.,* 1923 OK 676, 224 P. 148 (syl. n. 1 by the Court).

¶ 9 Time-honored conservative mortgage lending practices changed beginning in the early 1990's as loans, many of them subprime, were sold and resold, often multiple times, on the secondary market. The loans were transferred among banking institutions to be pooled into trusts. Mortgage-backed securities were then sold to investors, a process known as "securitization."

¶ 10 MERS was "[e]stablished to facilitate the residential loan securitization markets, ..."[11] "MERS was created by the mortgage banking industry to streamline the mortgage process by using electronic commerce to eliminate paper."[12] "MERS essentially privatized part of the mortgage recording system," namely the portion that records mortgage assignments. *Jackson v. MERS, Inc.,* 770 N.W.2d 487, 490 (Minn.2009).

¶ 11 Under the MERS system, MERS is named the "mortgagee" in the security instrument either at closing or by subsequent recorded assignment. At the same time, it is termed the "nominee" of the lender. According to MERS: "[N]o mortgage rights are transferred on the MERS system. The MERS system only tracks the changes in servicing rights and beneficial ownership interests. Servicing rights are sold via a purchase and sale agreement. Beneficial ownership interests are sold via endorsement and delivery of the promissory note."[13] MERS considers both events to be "non-recordable."[14] MERS remains the mortgagee of record without regard to which entity holds the note so long as the note holder is a MERS member. MERS maintains that "[a]ny loan registered on the MERS system is inoculated against future assignments because MERS remains the mortgagee no matter how many times servicing is traded."[15]

¶ 12 The perceived advantage of the MERS system for mortgage lenders is twofold. First, lenders avoid the filing fees associated with the recording of each assignment

---

9. Peterson, *supra* at 1364.

10. Peterson, *supra* at 1379.

11. Michael T. Madison et al., *Law of Real Estate Financing* § 12:35.

12. MERS web page overview.

13. Sharon McGann Horstkamp, *MERS Case Law Overview,* 64 Consumer Fin. L.Q. Rep. 458, 458 (2010) (author is Vice President and General Counsel for MERSCORP, Inc.)

14. *Id.*

15. MERS web page overview.

of the note.[16] Second, until recently, MERS would "bring foreclosure proceedings in its own name rather than the name of the actual owner of the loan, which is often a trust owned by investors."[17] That authority has been questioned in several jurisdictions.

¶ 13 The appellate courts of several states have addressed the impact of the MERS designation on later foreclosures of the pledged property. For example, in *Landmark Nat. Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (2009), MERS, as nominee of the second mortgagee, assigned the second mortgage to Sovereign Bank. The first mortgagee foreclosed, naming the borrower and second mortgagee as defendants, and took a default judgment. The trial court denied the motion of MERS and Sovereign Bank to set aside the default judgment. The Kansas Supreme Court affirmed, reasoning MERS lacked any enforceable rights because there was no evidence MERS owned the promissory note secured by the mortgage. *Landmark Nat. Bank v. Kesler, supra,* at 167–168. Similarly, appellate courts in Arkansas, Missouri, Maine and Vermont have refused to allow MERS or its assignee to assert rights against the mortgagor because it did not hold the note secured by the mortgage. *Mortgage Elec. Registration System v. Southwest Homes of Arkansas,* 2009 Ark. 152, 301 S.W.3d 1; *Bellistri v. Ocwen Loan Servicing, LLC,* 284 S.W.3d 619 (Mo.App. E.D., 2009); *Mortgage Electronic Registration Systems, Inc. v. Saunders,* 2 A.3d 289 (Me.2010); and *U.S. Bank National Association v. Kimball,* 27 A.3d 1087, 75 UCC Rep.Serv.2d 100, 2011 VT 81 (VT 2011).

## ANALYSIS

¶ 14 Appellants allege Appellee lacks standing to commence this foreclosure action. Appellants further allege the mortgage is a nullity because MERS cannot be a mortgagee in this state and therefore the note is unsecured. They also allege the original note should be required to be presented to the trial court prior to a trial court's disposition regardless if the defendant has answered.

¶ 15 The dispositive issue is whether or not Appellee has standing. Appellants allege that Appellee does not have standing to foreclose the subject property and therefore the trial court lacked subject matter jurisdiction. This argument is based on the lack of indorsements on the note attached to Appellee's petition to foreclose, and the fact that the original note was not presented to the trial court prior to judgment. Therefore, Appellee did not establish they were an entity entitled to enforce the note.

¶ 16 This Court has previously held:

Standing, as a jurisdictional question, may be correctly raised at any level of the judicial process or by the Court on its own motion. This Court has consistently held that standing to raise issues in a proceeding must be predicated on interest that is "direct, immediate and substantial." Standing determines whether the person is the proper party to request adjudication of a certain issue and does not decide the issue itself. The key element is whether the party whose standing is challenged has sufficient interest or stake in the outcome.

*Matter of the Estate of Doan,* 1986 OK 15, ¶ 7, 727 P.2d 574, 576. In *Hendrick v. Walters,* 1993 OK 162, ¶ 4, 865 P.2d 1232, 1234, this Court also held:

Respondent challenges Petitioner's *standing* to bring the tendered issue. Standing refers to a person's legal right to seek relief in a judicial forum. *It may be raised as an issue at any stage of the judicial process by any party or by the court sua sponte.* (emphasis original)

¶ 17 Furthermore, in *Fent v. Contingency Review Board,* 2007 OK 27, footnote 19, 163 P.3d 512, 519, this Court stated "[s]tanding may be raised at any stage of the judicial process or by the court on its own motion." Additionally in *Fent,* this Court stated:

Standing refers to a person's legal right to seek relief in a judicial forum. The three threshold criteria of standing are (1) a legally protected interest which must have

---

16. Peterson, *supra,* at 1362.

17. Peterson, *supra,* at 1362.

been injured in fact—*i.e.*, suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision. The doctrine of standing ensures a party has a personal stake in the outcome of a case and the parties are truly adverse. *Fent v. Contingency Review Board*, 2007 OK 27, ¶ 7, 163 P.3d 512, 519–520. In essence, a plaintiff who has not suffered an injury attributable to the defendant lacks standing to bring a suit. And, thus, "standing [must] be determined as of the commencement of suit; . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570, n. 5, 112 S.Ct. 2130, 2142 n. 5, 119 L.Ed.2d 351 (1992).[18]

■ ¶ 18 To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note and, absent a showing of ownership, the plaintiff lacks standing. *Gill v. First Nat. Bank & Trust Co. of Oklahoma City*, 1945 OK 181, 159 P.2d 717.[19] An assignment of the mortgage, however, is of no consequence because under Oklahoma law, "[p]roof of ownership of the note carried with it ownership of the mortgage security." *Engle v. Federal Nat. Mortg. Ass'n*, 1956 OK 176, ¶ 7, 300 P.2d 997, 999. "Therefore, in Oklahoma it is not possible to bifurcate the security interest from the note." *BAC Home Loans Servicing, L.P. v. White*, 2011 OK CIV APP 35, ¶ 10, 256 P.3d 1014, 1017. Because the note is a negotiable instrument, it is subject to the requirements of the UCC. Thus, a foreclosing entity has the burden of proving it is a "person entitled to enforce an instrument" by showing it was "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 12A–3–309 or subsection (d) of Section 12A–3–418 of this title." 12A O.S. 2001 § 3–301.

¶ 19 To show you are the "holder" of the note you must prove you are in possession of the note and the note is either "payable to bearer" (blank indorsement) or to an identified person that is the person in possession (special indorsement).[20] Therefore, both possession of the note and an indorsement on the note or attached allonge[21] are required in order for one to be a "holder" of the note.

¶ 20 To be a "nonholder in possession who has the rights of a holder" you must be in possession of a note that has not been indorsed either by special indorsement or blank indorsement. There is nothing in the present record to demonstrate the note has been indorsed. No negotiation has occurred because the person/entity now in possession did not become a holder by reason of the lack of the note being indorsed. Negotiation is the voluntary or involuntary transfer of an instrument by a person other than the issuer to a person who thereby becomes its holder. 12A O.S.2001, § 3–201. Transfer occurs when the instrument is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to

---

**18.** The dissenting opinion in this matter relies upon Justice Opala's concurring opinion in *Toxic Waste Impact Group, Inc. v. Leavitt*, 1994 OK 148, 890 P.2d 906, for the proposition that standing is not a jurisdictional question. Justice Opala's concurring opinion was not the majority opinion of this Court and as such "a minority opinion has no binding, precedential value." 20 Am.Jur.2d Courts § 138.

**19.** This opinion occurred prior to the enactment of the UCC. It is, however, possible for the owner of the note not to be the person entitled to enforce the note if the owner is not in possession of the note. (See the *REPORT OF THE PERMANENT EDITORIAL BOARD FOR THE UNIFORM COMMERCIAL CODE, APPLICATION OF THE UNIFORM COMMERCIAL CODE TO SELECTED ISSUES RELATING TO MORTGAGE NOTES (NOVEMBER 14, 2011)).*

**20.** 12A O.S.2001, §§ 1–201(b)(21), 3–204 and 3–205.

**21.** According to Black's Law Dictionary (9th ed. 2009) an allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." It should be noted that under 12A O.S.2001, § 3–204(a) and its comments in paragraph 2, it is no longer necessary that an instrument be so covered with previous indorsements that additional space is required before an allonge may be used. An allonge, however, must still be affixed to the instrument.

enforce the instrument. 12A O.S.2001, § 3–203. Delivery of the note would still have to occur even though there is no negotiation. Delivery is defined as the voluntary transfer of possession. 12A O.S.2001, § 1–201(b)(15). The transferee would then be vested with any right of the transferor to enforce the note. 12A O.S.2001, § 3–203(b). Some jurisdictions have held, without holder status and therefore the presumption of a right to enforce, the possessor of the note must demonstrate both the fact of the delivery and the purpose of the delivery of the note to the transferee in order to qualify as the person entitled to enforce. *In re Veal*, 450 B.R. 897, 912 (B.A.P. 9th Cir.2011). See also, 12A O.S.2001, § 3–203.

¶ 21 In the present case, Appellee claims they are the holder of the note and mortgage. The note found in the record contains no indorsements. Appellants state, in their Reply Brief, that an alleged original "blue ink" copy of the note was with Appellee's counsel at the hearing on the motion/petition to vacate with a belated indorsement; however, the "blue ink" copy does not appear in the record and is not before this Court for review. For the above reasons, and more specifically because there is no indorsement on the note in the record, Appellee can not be a holder as defined by the statute.

¶ 22 The real issue is not whether or not one is a holder but whether or not one is entitled to enforce the note. As mentioned, a person/entity can be entitled to enforce the note without any indorsements. There is, however, a higher standard to meet to establish you are entitled to enforce the note if all you possess is the note without any indorsement.

¶ 23 Attached to Appellee's petition to foreclose was an Assignment of Real Estate Mortgage. This assignment is dated October 21, 2008, wherein, MERS, as nominee for Encore, purports to assign the subject mortgage to Appellee. This document also reflects, MERS assigned the mortgage "together with the note, debts and claims thereby secured" covering the subject property.

Therefore, it appears MERS attempted to transfer both the mortgage and note to Appellee by this document.

¶ 24 MERS is not mentioned in the note but only in the mortgage. The status given MERS in the mortgage is mortgagee and further states "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." Encore is named as the Lender in the mortgage. Neither Oklahoma law nor the mortgage documents define the term "nominee." In the absence of a contractual definition, the parties leave the definition to judicial interpretation. Black's Law Dictionary (9th ed. 2009)defines a nominee as "[a] person designated to act in place of another usu[ally] in a very limited way." "This definition suggests that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves." *Landmark Nat. Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158, 166 (2009). By definition, a "nominee" is substantially the same as the definition of an "agent." [22] The legal status of a nominee/agent, then, depends on the context of the relationship of the nominee/agent to its principal. In the present case, that relationship appears to only be related to the mortgage and not the note. There is nothing in the record to demonstrate MERS had any authority to assign the note to Appellee although, arguably, it had authority to assign the mortgage. Assignment of the mortgage, however, does not assign the note. As previously stated, in Oklahoma, ownership of the note is controlling, and assignment of the note carries with it assignment of the mortgage—not the other way around. *Gill v. First Nat. Bank & Trust Co. of Oklahoma City*, 1945 OK 181, 159 P.2d 717, 719. " . . . [M]ortgage securing the payment of a negotiable note is merely an incident and accessory to the note, and partakes of its negotiability, and the endorsement and delivery of the note carries with it the mortgage without any formal assignment thereof." *Prudential Ins. Co. of America v. Ward*, 1929 OK 71, ¶ 19, 274 P. 648, 650.

**22.** Black's Law Dictionary defines "agent" as "[o]ne who is authorized to act for or in place of another; a representative." (9th ed. 2009).

¶ 25 Therefore, if Appellee is trying to establish it is a person entitled to enforce the note by virtue of being a nonholder in possession who has the rights of a holder, the assignment of the mortgage is not supportive. A person trying to establish it is a nonholder in possession who has the rights of a holder must bear the burden of establishing its status as a nonholder in possession with the rights of a holder. Appellee must establish delivery of the note as well as the purpose of that delivery. Without anything in the record establishing Appellee is a person entitled to enforce the note, either as a holder or nonholder in possession who has the rights of a holder, there is nothing to establish Appellee's standing in this case.

¶ 26 Appellee must also demonstrate it became a "person entitled to enforce" **prior** to the filing of the foreclosure proceeding. We find there is no evidence in the record establishing Appellee had standing to commence this foreclosure action. The trial court's granting of a default judgment in favor of Appellee could not have been rationally based upon the evidence or Oklahoma law. Therefore, we find that the trial court abused its discretion when granting the default judgment. Because this issue is dispositive, we will not address the remaining issues on appeal. The order denying Appellant's petition and motion to vacate should be reversed and remanded back for further proceedings to determine whether Appellee is a person entitled to enforce the note consistent with this opinion.

## CONCLUSION

¶ 27 It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the note, and to have the proper supporting documentation in hand when filing suit, showing the history of the note, so that the defendant is duly apprised of the rights of the plaintiff. This is accomplished by showing the party is a holder of the instrument or a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A O.S. 2001, § 3–309 or 12A O.S.2001, § 3–418.

Likewise, for the homeowners, absent adjudication on the underlying indebtedness, today's decisions to reverse the denial of the petition and motion to vacate cannot cancel their obligation arising from an authenticated note, or insulate them from foreclosure proceedings based on proven delinquency. This Court's decision in no way releases or exonerates the debt owed by the defendants on this home. See, *U.S. Bank National Association v. Kimball,* 27 A.3d 1087, 75 UCC Rep.Serv.2d 100, 2011 VT 81 (VT 2011); and *Indymac Bank, F.S.B. v. Yano–Horoski,* 78 A.D.3d 895, 912 N.Y.S.2d 239 (2010).

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

¶ 28 CONCUR: TAYLOR, C.J., KAUGER, WATT, EDMONDSON, REIF, COMBS, JJ.

¶ 29 DISSENT: WINCHESTER (Joins GURICH, J.), GURICH (By Separate Writing), JJ.

¶ 30 RECUSED: COLBERT, V.C.J.

GURICH, J., with whom WINCHESTER, J. joins dissenting:

¶ 1 I respectfully dissent. In this case, the record demonstrates that the Plaintiff filed the Petition in May of 2009, attaching an unindorsed note and an assignment of mortgage. The Defendants failed to answer the Petition and filed nothing in the case until the Plaintiff's moved to confirm the sale of the property at sheriff's sale. In their Petition and Motion to Vacate Final Entry of Judgment, the Defendants argued that the Plaintiff was not the proper party to bring the foreclosure action. However, because the Defendants failed to assert Plaintiff's lack of "standing" until after the judgment, I would affirm the trial court's denial of Defendants' Petition and Motion to Vacate Final Entry of Judgment.

The majority states that "[t]o commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note, and absent a showing of ownership, the plaintiff lacks standing," citing *Gill v. First Nat. Bank & Trust Co.,* 1945 OK 181,

159 P.2d 717.[1] *See* Majority Op. ¶ 5. I agree that in any foreclosure action a party must demonstrate it is the proper party to request adjudication of the issues. However, the issue of whether a party is the proper party to request adjudication of the issues is a real-party-in-interest issue, not an issue of "standing," as the majority frames it. *See Toxic Waste Impact Group, Inc. v. Leavitt,* 1994 OK 148, 890 P.2d 906 (Opala, J., concurring). Justice Opala framed the issue correctly in *Toxic Waste Impact Group:*

> Standing in the federal legal system is imbued with a constitutional/jurisdictional dimension, while in the body of state law it *fits under the rubric of ordinary procedure.* The U.S. Constitution, Article III, has long been held to require that a "case" or "controversy" is essential to invoke federal judicial jurisdiction and that a person's competence to bring an action is a core component of standing in a case-or-controversy inquiry. It is for this reason that standing is an integral part of the mechanism for invoking the federal judiciary's power.
>
> Oklahoma's fundamental law places no restraint on the judiciary's power analogous to the federal case-or-controversy requirement. Under the earlier Code of Civil Procedure the suit had to be brought by the real party in interest. That requirement has always been non-jurisdictional. If a state court proceeded to adjudicate a claim pressed by one not in that status, its decision was not fraught with jurisdictional infirmity but rather regarded as erroneous for want of proof to establish an important element of the claim. An error in this category is waivable at the option of the defendant; and, if not asserted on appeal, the reviewing court may reach the merits of the case despite a plaintiff's apparent lack of standing at nisi prius.

*Toxic Waste Impact Group, Inc. v. Leavitt,* 1994 OK 148, 890 P.2d 906 (Opala, J., concurring, ¶¶ 2–3) (emphasis added); *see also Black Hawk Oil Co. v. Exxon,* 1998 OK 70, ¶ 24, 969 P.2d 337, 344 ("Using the term 'standing' to designate real-party-in-interest issues tempts courts to apply standing principles outside the context in which they were developed. . . . A defendant is entitled to have the suit against him prosecuted by the 'real party in interest' but 'his concern ends when a judgment for or against the nominal plaintiff would protect defendant from any action on same demand by another.'") (Watt, J., Majority Op.).

¶ 2 The majority in this case cites *Hendrick v. Walters,* 1993 OK 162, ¶ 4, 865 P.2d 1232, 1234 and *Fent v. Contingency Review Board,* 2007 OK 27, n. 19, 163 P.3d 512, 519 for the proposition that "standing may be raised at any stage of the judicial process or by the court on its own motion." *See* Majority Op. ¶ 4. Those cases cite *Matter of the Estate of Doan,* 1986 OK 15, ¶ 7, 727 P.2d 574, as authority for this proposition. Arguably, however, *Doan* misstates the law:

> Ever since the Code of Civil Procedure was replaced in 1984 by the Pleading Code, our nomenclature for identifying the party entitled to sue, which began to follow that of federal jurisprudence, has used "standing" as if it were a functional equivalent of the earlier procedural terms of art—real party in interest, one with appealable interest, one occupying the aggrieved-party or pecuniary-interest status. It was during this transition that one of our opinions inadvertently referred to "standing" in terms of a jurisdictional requirement, thus creating the misimpression that the term has a jurisdictional dimension. Oklahoma's constitution has no case-or-controversy clause. Standing is hence to be viewed as an adjective-law concept. The inadvertent reference to the contrary should be treated as ineffective to alter standing's true character in the body of our procedural law.

---

1. In *Gill,* the plaintiff brought an action to foreclose a mortgage on real property. There was no discussion in the case of whether the plaintiff had standing to bring the action or whether the plaintiff was the real party in interest. In fact, the case was tried to the Court, and the appeal turned on the sufficiency of evidence presented at trial. The *Gill* decision stands for the proposition that the assignment of the note carries with it an assignment of the mortgage. It is not relevant to the standing analysis, nor does it stand for the proposition that the plaintiff must prove *at the time of filing* that it has a right to enforce the note.

. . . .

I concur in today's opinion and in the disposition of the cause. If I were writing for the court, I would additionally declare that *Doan*'s inadvertent reference to federal law is to be viewed as withdrawn. *Lujan*'s tripartite standing test, which we adopt today, must be treated as having been received sans its federal jurisdictional baggage.

See *Toxic Waste Impact Group*, 1994 OK 148, 890 P.2d 906 (Opala, J., concurring ¶ 4).

¶ 3 Additionally, both *Hendrick* and *Fent* were original actions in this Court. As such, "standing" could have been raised at any point by this Court sua sponte. However, in a proceeding in District Court, because it is a non-jurisdictional issue, failure to assert that the Plaintiff is not the real party in interest may be waived. See *Liddell v. Heavner*, 2008 OK 6, n. 5, 180 P.3d 1191 (Opala, J., Majority Op.); *see also* 12 O.S.2012 § 2008(D).

¶ 4 In this case, the facts demonstrate that the Defendants did not raise the issue of "standing" until after the property was sold at sheriff's sale. Therefore, the Defendants waived the issue below, and the majority improperly addresses the issue on appeal.[2] *Liddell*, 2008 OK 6, n. 5, 180 P.3d 1191.

¶ 5 Additionally, the trial court in this case correctly granted default judgment to the Plaintiffs and did not abuse its discretion in denying Defendants' Petition and Motion to Vacate Final Entry of Judgment. As the Appellee argues in its Answer Brief, it had a right to enforce the note despite the fact the note lacked an indorsement. The Majority correctly states the law regarding a nonholder in possession who has the rights of a holder, entitling that entity to enforce the note. However, I cannot agree with the Majority's application of the law to the facts in this case.

Transfer of an instrument occurs when the instrument is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument. 12A O.S. § 3–203. Once the note is delivered, the transferee is then vested with any right of the transferor to enforce the note. 12A O.S. § 3–203(b). Official Comment 2 of Section 3–203 explains:

> If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument ... if the transferor was a holder at the time of transfer. Although the transferee is not a holder under (b) the transferee obtained the rights of the transferor as holder. Because the transferee's rights are derivative of the transferor's rights, those rights must be proved.... The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it. Proof of a transfer to the transferee by a holder is proof that the transferee has acquired the rights of a holder.

In this case, the note attached to the Petition was not indorsed. As such, to enforce the note, the Plaintiff had to prove it was a nonholder in possession with rights of the holder. Plaintiff's Petition alleged a valid cause of action against Defendants, ownership of the subject note and mortgage, Defendants' default on the note, and Plaintiff's right and intent to foreclose. Defendants were served with summons and Petition and were fully aware of Plaintiff's claim against them. The Defendants not only failed to answer the Petition and deny the pled facts, but also failed to respond in any way until the Plaintiff's moved to confirm the sale of the property at sheriff's sale. As a result of the Defendant's failure to respond, the facts pled in the Petition were admitted. 12 O.S. 2012 § 2008(D). As such, Plaintiff proved it was a nonholder in possession with rights of the holder and an entity entitled to enforce

2. The majority's discussion of MERS is also improper as MERS was not a party to the action and was not seeking to enforce the note and mortgage in this case. Again, had the Defendants wished to challenge Plaintiff's right to bring the foreclosure action, it should have done so before judgment. Because it did not, it waived the issue, and this Court cannot address the issue on appeal.

the note. The trial court correctly granted default judgment to the Plaintiffs.

¶ 6 Because the issue raised by the Defendants in this case is a real-party-in-interest issue and not one of "standing," the Defendants waived their right to argue the issue when they failed to assert it until after the judgment. As such, the issue was waived, and it is improper for the majority to address the issue on appeal. Additionally, because the Defendants failed to respond before the judgment, the Plaintiff proved it was entitled to enforce the note. The trial court correctly granted default judgment to the Plaintiffs and did not abuse its discretion in denying Defendants' Petition and Motion to Vacate Final Entry of Judgment. The procedure imposed by the majority in this case invalidates a properly granted default judgment, will result in delay, will not affect the inevitable outcome of foreclosure, and will increase the homeowner's debt. I would affirm the trial court's denial of Defendants' Petition and Motion to Vacate Final Entry of Judgment.