278 P.3d 596 (2012)
2012 OK 32
U.S. BANK, NATIONAL ASSOCIATION, not in its individual capacity but solely as Trustee on behalf of GSAA Home Equity Trust 2006-6, Plaintiff/Appellee,
v.
David F. MOORE, a/k/a David F. Moore and Barbara Moore a/k/a Barbara K. Moore, Defendants/Appellants.
No. 109,763.
Supreme Court of Oklahoma.
April 10, 2012.
Rehearing Denied May 24, 2012.
*597 Gary L. Blevins, Gary L. Blevins & Associates, PC, Oklahoma City, Oklahoma, for Defendants/Appellants.
Bryan Miles Harrington and A. Grant Schwabe, Kivell, Rayment and Francis, PC, Tulsa, Oklahoma, for Plaintiff/Appellee.
COMBS, J.

FACTUAL AND PROCEDURAL HISTORY
¶ 1 On October 21, 2005, David F. Moore and Barbara Moore, husband and wife (hereinafter "Appellants"), executed a Note and Mortgage in favor of Colonial Bank, N.A. (hereinafter "Lender"), for property located in Oklahoma County, Oklahoma. Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS"), was designated as the nominee for the lender pursuant to subsection (C) of the Mortgage.[1] Within the Mortgage was a security interest provision with the following granting clause:
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security *598 Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including ... the right to foreclose and sell the Property.
¶ 2 Also contained in the Mortgage was a provision entitled "Sale of Note; Change of Loan Servicer." Per the terms of this provision:
The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.
Thus, the borrower may have difficulty in determining who holds the note and mortgage, and to whom the payment is due.
¶ 3 Appellants defaulted on the Note during August of 2008. U.S. Bank, National Association, commenced foreclosure proceedings on December 24, 2008, not in its individual capacity, but solely as trustee on behalf of GSAA Home Equity Trust 2006-6 (hereinafter "Appellee"). According to the verified petition, the Appellee was "the present holder of said Note and Mortgage having received due assignment through mesne assignments of record or conveyance via mortgaging servicing transfer." The original petition did not attach a copy of the note in question sued upon. Appellants answered, pro se, on May 20, 2009. Appellants disputed all allegations and requested that the Appellee's "submit additional documentation to prove their claims including the representation that they were the "present holder of said Note." Appellee subsequently filed an amended petition and a second amended petition to add additional defendants. Neither of these amendments included a copy of the note sued upon.
¶ 4 Appellee submitted its Motion for Summary Judgment (hereinafter the "Motion") to the court on November 20, 2009. Again, the Appellee represented that it was the holder of the Note. Documentation attached to the Motion attempted to support this representation: it included the Mortgage, the Note, an Assignment of Mortgage, and an Affidavit in Support of Appellee's Motion for Summary Judgment. For the first time, Appellee submitted the Note and Mortgage to the trial court. The note was indorsed in blank and contained no date for the indorsement.
¶ 5 Executed on October 21, 2005, the Note designated the Appellants as the Borrowers and Colonial Bank, N.A., as the Lender. The following agreement, inter alia, was made:
I [Appellants] understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the `Note Holder.'
An Assignment of Mortgage (hereinafter the "Assignment") was attached to the motion. MERS, again as nominee for the Lender, assigned the Mortgage, which secured "the payment of a certain promissory note" described therein, to the Appellee.[2] The Assignment was executed and notarized on February 11, 2009; it was recorded one week later, but made effective "11/27/2008." In other words, the Assignment was executed after the foreclosure suit commenced, but made effective before the filing of the petition as well as any subsequent amendments to the petition.
¶ 6 Appellants did not respond to Appellee's Motion, and the trial court entered a default judgment against them. The trial court entered a final judgment, on December 17, 2009, (hereinafter "Judgment") in favor of the Appellee. The judgment concluded that Appellee was the owner and holder of the Note and Mortgage; the court then approved an Order of Sale. Approximately six (6) weeks later, on January 31, 2010, the Appellants filed for protection under Chapter 7 of Title XI of the United States Bankruptcy Code, which stayed the proceedings. On March 2, 2011, the bankruptcy court granted Appellee's Motion to Lift the Automatic Stay. Shortly thereafter, on March 18, 2011, with the assistance of counsel, the Appellants filed a Petition to Vacate the Judgment. The trial court subsequently dismissed the Appellants Petition to Vacate the Judgment.

*599 STANDARD OF REVIEW
¶ 7 The standard of review[3] for a trial court's ruling either vacating or refusing to vacate a judgment is abuse of discretion. Ferguson Enterprises, Inc. v. Webb Enterprises, Inc., 2000 OK 78, ¶ 5, 13 P.3d 480, 482; Hassell v. Texaco, Inc., 1962 OK 136, 372 P.2d 233. A clear abuse-of-discretion standard includes appellate review of both fact and law issues. Christian v. Gray, 2003 OK 10, ¶ 43, 65 P.3d 591, 608. An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law, or where there is no rational basis in evidence for the ruling. Fent v. Oklahoma Natural Gas Co., 2001 OK 35, ¶ 12, 27 P.3d 477, 481.

ANALYSIS
¶ 8 The Appellants have questioned the standing of the Appellee to commence foreclosure proceedings against them. "Standing refers to a person's legal right to seek relief in a judicial forum." Fent v. Contingency Review Board, 2007 OK 27, ¶ 7, 163 P.3d 512, 519-520. Foremost, the party seeking relief must prove that they suffered an actual and concrete injury. Absent an injury of this nature, the party lacks standing. Whether or not such an injury exists is determined at the commencement of the lawsuit. Lujan v. Defenders of Wildlife, 504 U.S. 555, 570, n. 5, 112 S.Ct. 2130, 2142, 119 L.Ed.2d 351 (1992).
¶ 9 Countering, Appellee argues that Appellants have forfeited the opportunity to question enforcement of the Note. However, a review of the record reveals the Appellants, in their pro se Answer, clearly questioned the ability of the Appellee to enforce the Note.[4] It is settled law in Oklahoma that standing "may be raised at any stage of the judicial process by any party or by the court sua sponte." Hendrick v. Walters, 1993 OK 162, ¶ 4, 865 P.2d 1232, 1234 (emphasis original). Therefore, this issue is properly before the Court.
¶ 10 Article III of the Uniform Commercial Code (hereinafter "U.C.C.") governs negotiable instruments and is codified in the Oklahoma Statutes. Promissory notes are negotiable instruments. See, 12A O.S.2001, § 3-104. The Appellee has the burden of showing that it is entitled to enforce the instrument. See Reserve Loan Life Ins. Co. v. Simmons, 1928 OK 669, ¶ 9, 282 P. 279, 281. Unless the Appellee was able to enforce the Note at the time the suit was commenced, it cannot maintain its foreclosure action against the Appellants.
¶ 11 Ownership of the note determines ownership of the mortgage. Engle v. Federal Nat'l. Mortg. Ass'n, 1956 OK 176, ¶ 7, 300 P.2d 997, 999. Oklahoma law does not permit the bifurcation of the security interest from the note. Deutsche Bank National Trust v. Brumbaugh, 2012 OK 3, 270 P.3d 151; BAC Home Loans Servicing, L.P. v. White, 2011 OK CIV APP 35, ¶ 10, 256 P.3d 1014, 1017. A party which is assigned a mortgage without the accompanying promissory note holds no rights of enforcement. Id. Plainly, a party must properly acquire rights to both instruments before such party is able to enforce their terms.
¶ 12 In the present case, the only instrument attached to Appellee's petition was the Mortgage. Appellee did not produce the Note until the summary disposition stage. Under the U.C.C., both holders and non-holders in possession of a negotiable instrument are permitted to enforce the instrument. 12A O.S.2001, § 3-301. A "holder" is "(A) the person in possession of a negotiable instrument that is payable either to bearer[5] or to an identified person that is the person *600 in possession." 12A O.S.2001, § 1-201(21).[6] The evidence in the present matter is not clear as to whether the Appellee held the Note as a "holder" or as a "non-holder in possession with the ability to enforce the Note.
¶ 13 To enforce a negotiable instrument as a non-holder in possession, the moving party must show (i) that the party possessed the negotiable instrument when suit was filed; (ii) how possession was achieved; and (iii), if necessary, that the purpose of the transfer was to transfer rights of enforcement. 12A O.S.2001, 3-301. The Appellee has not demonstrated its possession of the Note at the time it commenced foreclosure proceedings against Appellants.
¶ 14 Appellants contend Appellee lacks standing to commence this foreclosure action. Appellants further allege the validity of the affidavit offered in support of Appellees Motion for Summary Judgment. The dispositive issue is whether or not Appellee has standing. Appellants' argument is based on the failure of Appellee to establish Appellee was a person entitled to enforce the Note at the commencement of the action and the inability to establish the effectiveness of the indorsements attached to the Note when the Note was ultimately produced as an exhibit to the Appellees Motion for Summary Judgment.
¶ 15 This Court has previously held:
Standing, as a jurisdictional question, may be correctly raised at any level of the judicial process or by the Court on its own motion. This Court has consistently held that standing to raise issues in a proceeding must be predicated on interest that is "direct, immediate and substantial." Standing determines whether the person is the proper party to request adjudication of a certain issue and does not decide the issue itself. The key element is whether the party whose standing is challenged has sufficient interest or stake in the outcome.
Matter of the Estate of Doan, 1986 OK 15, ¶ 7, 727 P.2d 574, 576. In Hendrick v. Walters, 1993 OK 162, ¶ 4, 865 P.2d 1232, 1234, this Court also held:
Respondent challenges Petitioner's standing to bring the tendered issue. Standing refers to a person's legal right to seek relief in a judicial forum. It may be raised as an issue at any stage of the judicial process by any party or by the court sua sponte. (Emphasis original)
¶ 16 Furthermore, in Fent v. Contingency Review Board, 2007 OK 27, footnote 19, 163 P.3d 512, 519, this Court stated "[s]tanding may be raised at any stage of the judicial process or by the court on its own motion." Additionally in Fent, this Court stated:
Standing refers to a person's legal right to seek relief in a judicial forum. The three threshold criteria of standing are (1) a legally protected interest which must have been injured in facti.e., suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision. The doctrine of standing ensures a party has a personal stake in the outcome of a case and the parties are truly adverse.
Fent v. Contingency Review Board, 2007 OK 27, ¶ 7, 163 P.3d 512, 519-520. In essence, a plaintiff who has not suffered an injury attributable to the defendant lacks standing to bring a suit. And, thus, "standing [must] be determined as of the commencement of suit;..." Lujan v. Defenders of Wildlife, 504 U.S. 555, 570, n. 5, 112 S.Ct. 2130, 2142, n. 5, 119 L.Ed.2d 351 (1992).
¶ 17 To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note and, absent a showing of ownership, the plaintiff lacks standing. Gill v. First Nat. Bank & Trust Co. of Oklahoma City, 1945 OK 181, 159 P.2d 717.[7] An assignment of the mortgage, *601 however, is of no consequence because under Oklahoma law, "[p]roof of ownership of the note carried with it ownership of the mortgage security." Engle v. Federal Nat. Mortg. Ass'n, 1956 OK 176, ¶ 7, 300 P.2d 997, 999. Therefore, in Oklahoma it is not possible to bifurcate the security interest from the note." Deutsche Bank National Trust v. Brumbaugh, 2012 OK 3, 270 P.3d 151; BAC Home Loans Servicing, L.P. v. White, 2011 OK CIV APP 35, ¶ 10, 256 P.3d 1014, 1017. Because the note is a negotiable instrument, it is subject to the requirements of the UCC. Thus, a foreclosing entity has the burden of proving it is a "person entitled to enforce an instrument" by showing it was "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 12A-3-309 or subsection (d) of Section 12A-3-418 of this title." 12A O.S.2001 3-301.
¶ 18 To show you are the "holder" of the Note you must prove you are in possession of the note and the note is either "payable to bearer" (blank indorsement) or to an identified person that is the person in possession (special indorsement).[8] Therefore, both possession of the note and an indorsement on the note or attached allonge[9] are required in order for one to be a "holder" of the Note.
¶ 19 Negotiation is the voluntary or involuntary transfer of an instrument by a person other than the issuer to a person who thereby becomes its holder. 12A O.S.2001, 3-201. Transfer occurs when the instrument is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument. 12A O.S.2001, 3-203. Delivery of the note would still have to occur even though there is no negotiation. Delivery is defined as the voluntary transfer of possession. 12A O.S. 2001, 1-201(b)(15). The transferee would then be vested with any right of the transferor to enforce the note. 12A O.S.2001, 3-203(b). Some jurisdictions have held, without holder status and therefore the presumption of a right to enforce, the possessor of the note must demonstrate both the fact of the delivery and the purpose of the delivery of the Note to the transferee in order to qualify as the person entitled to enforce. In re Veal, 50 B.R. 897, 912 (B.A.P. 9th Cir.2011). See also, 12A O.S.2001, 3-203.
¶ 20 Appellee must also demonstrate it became a "person entitled to enforce" prior to the filing of the foreclosure proceeding. We find there is no evidence in the record establishing Appellee had standing to commence this foreclosure action. The trial court's granting of a default judgment in favor of Appellee could not have been rationally based upon the evidence or Oklahoma law. Therefore, we find that the trial court abused its discretion by dismissing the Appellants Petition to Vacate the default judgment. Because this issue is dispositive, we will not address the remaining issues on appeal. The order denying Appellant's petition and motion to vacate should be reversed and remanded back for further proceedings to determine whether Appellee is a person entitled to enforce the Note consistent with this opinion.

CONCLUSION
¶ 21 It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the Note, and to have the proper supporting documentation in hand when filing suit, showing the history of the Note, so that the defendant is duly apprised of the rights of the plaintiff. This is accomplished by showing the party is a holder of the instrument or a nonholder in *602 possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A O.S. 2001, 3-309 or 12A O.S.2001, 3-418. Likewise, for the homeowners, absent adjudication on the underlying indebtedness, today's decision to reverse the dismissal of the petition and motion to vacate cannot cancel their obligation arising from an authenticated Note, or insulate them from foreclosure proceedings based on proven delinquency. This Court's decision in no way releases or exonerates the debt owed by the defendants on this home. See, U.S. Bank National Association v. Kimball, 27 A.3d 1087, 75 UCC Rep.Serv.2d 100, 2011 VT 81 (VT 2011); and Indymac Bank, F.S.B. v. Yano-Horoski, 78 A.D.3d 895, 912 N.Y.S.2d 239 (2010).
REVERSED AND REMANDED WITH INSTRUCTIONS
¶ 22 CONCUR: TAYLOR, C.J., KAUGER, WATT, EDMONDSON, REIF, COMBS, JJ.
¶ 23 DISSENT: WINCHESTER (JOINS GURICH, J.), GURICH (BY SEPARATE WRITING), JJ.
¶ 24 RECUSED: COLBERT, V.C.J.
GURICH, J., with whom WINCHESTER, J. joins dissenting:
¶ 1 I respectfully dissent. In this case, the record indicates that attached to Plaintiff's Motion for Summary Judgment was an indorsed-in-blank note, the mortgage, an assignment of mortgage, and an affidavit in support of the motion for summary judgment. Because the Plaintiff was the proper party to pursue the foreclosure and because the Plaintiff presented the proper documentation at summary judgment to prove such, the trial court did not abuse its discretion in denying Defendants' Petition to Vacate. I would affirm the trial court for the reasons stated in my dissenting opinions in Deutsche Bank National Trust Co. v. Matthews, 2012 OK 14, 273 P.3d 43 (Gurich, J. dissenting) and Bank of America, NA v. Kabba, 2012 OK 23, 276 P.3d 1006 (Gurich, J. dissenting).[1]
NOTES
[1] Subsection (C) of the Mortgage reads as follows: "`MERS' is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this security instrument."
[2] Specifically, the assignment was made to "U.S. Bank National Association, not in its individual capacity, but solely as trustee on behalf of GSAA Home Equity Trust 2006-6."
[3] Summary judgment decisions are reviewed de novo, Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053, whereas orders denying or granting a petition to vacate are reviewed for an abuse of discretion, Patel v. OMH Medical Center, Inc., 1999 OK 33 at ¶ 20, 987 P.2d 1185.
[4] In relevant part, the Answer states: "The defendants hereby dispute the cause and information within the petition and hereby request that the plaintiff provide proper documentation of any and all allegations" including the allegation that the Appellee was present holder of the Note and Mortgage and thereby entitled to enforce its terms.
[5] "Bearer" means ... a person in possession of an instrument, negotiable tangible document of title, or certificated security payable to bearer or endorsed in blank. 12A, O.S.2001 § 1-201(5).
[6] Documents of title are not at issue. Therefore, this is the only relevant U.C.C. definition of "holder."
[7] This opinion occurred prior to the enactment of the UCC. It is, however, possible for the owner of the note not to be the person entitled to enforce the note if the owner is not in possession of the note. (See the REPORT OF THE PERMANENT EDITORIAL BOARD FOR THE UNIFORM COMMERCIAL CODE, APPLICATION OF THE UNIFORM COMMERCIAL CODE TO SELECTED ISSUES RELATING TO MORTGAGE NOTES (NOVEMBER 14, 2011)).
[8] 12A O.S.2001, 1-201(b)(21), 3-204 and 3-205
[9] According to Black's Law Dictionary (9th ed. 2009) an allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." It should be noted that under 12A O.S.2001, 3-204(a) and its comments in paragraph 2, it is no longer necessary that an instrument be so covered with previous indorsements that additional space is required before an allonge may be used. An allonge, however, must still be affixed to the instrument.
[1] Although I originally concurred in the majority opinion in Deutsche Bank National Trust v. Brumbaugh, 2012 OK 3, 270 P.3d 151, which the majority now cites as authority in this case, after further consideration, I disagree with the majority's analysis in that case, and my views on the issues in these cases are accurately reflected in J.P. Morgan Chase Bank N.A. v. Eldridge, 2012 OK 24, 273 P.3d 62 (Gurich, J. concurring in part and dissenting in part); Kabba, 2012 OK 23, 276 P.3d 1006 (Gurich, J. dissenting); CPT Asset Backed Certificates, Series 2004-EC1 v. Kham, 2012 OK 22, 278 P.3d 586 (Gurich, J. dissenting); Deutsche Bank National Trust Co. v. Richardson, 2012 OK 15, 273 P.3d 50 (Gurich, J. concurring in part and dissenting in part); and Matthews, 2012 OK 14, 273 P.3d 43 (Gurich, J. dissenting).