702 A.2d 482

# IN THE MATTER OF THE ESTATE OF CHARLES A. ZAHN, DECEASED.

Superior Court of New Jersey
Appellate Division

Argued September 30, 1997—Decided October 21, 1997.

Before Judges DREIER, KEEFE and WECKER.

*Stewart M. Hutt* argued the cause for appellant F. Howard Zahn (*Pinto & Butler*, attorneys; *Lisa M. Butler*, on the brief).

*Salvatore P. DiFazio* argued the cause for respondent Nina Fichter (*DiFazio, Radom & Wetter*, attorneys; *Susan J. Radom*, on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendant F. Howard Zahn, one of the executors of the Estate of Charles A. Zahn, appeals by leave granted from an interlocutory order directing it to pay all costs associated with the note and mortgage of property which was formerly held in joint tenancy between plaintiff, Nina Fichter, and the decedent.

In 1994, Charles A. Zahn ("Zahn") bought a single-family house located in Jamesburg, New Jersey, and took title in his own name. In part payment of the purchase price of the house, Zahn executed a promissory note in his name to NatWest Home Mortgage Corporation for $120,000, secured by a first purchase-money mortgage on the real estate. Thereafter, Zahn entered into a relationship with plaintiff, and they lived together in the house until his death the following year.

In November 1995, upon discovering that he was seriously ill, Zahn conveyed title to the house to plaintiff and himself as joint tenants with a right of survivorship. According to plaintiff, Zahn informed her prior to the transfer that after his death, she was "to become the sole owner of the house, free and clear of any liens or encumbrances."

Zahn died December 27, 1995, leaving a will which named his brother, defendant F. Howard Zahn, and his friend, Philip H. Shore, executors of his estate. Pursuant to the will, Zahn directed his named executors to "pay all of my just debts and funeral expenses as soon as practicable after my death." He then bequeathed his entire estate to his two children, Tasha A. Zahn and Heather N. Zahn. Zahn had not changed his will to name plaintiff as a beneficiary. Zahn's will was admitted to probate on February 14, 1996.

Following his death, NatWest Home Mortgage Corporation notified plaintiff that payments under the mortgage loan were delinquent and foreclosure proceedings would commence if the payments were not satisfied. To prevent foreclosure, plaintiff paid the mortgage on the house and subsequently sought reimbursement from Zahn's estate. When defendant refused, plaintiff filed this action seeking reimbursement for payments made on the mortgage.

 Plaintiff claimed she qualified for exoneration from the mortgage and the underlying note, and she was not subject to the nonexoneration provisions of *N.J.S.A.* 3B:25–1, which provides:

When property subject to a mortgage or security interest descends to an heir or passes to a devisee, the heir or devisee shall not be entitled to have the mortgage or security interest discharged out of any other property of the ancestor or testator, but the property so descending or passing to him shall be primarily liable for the mortgage or secured debt, unless the will of the testator shall expressly or impliedly direct that the mortgage or security interest be otherwise paid.

Plaintiff argued that since she was not an heir or devisee within the definition of *N.J.S.A.* 3B:25–1, and Zahn's will did not expressly direct her to satisfy the mortgage or security interest underlying the house, she was not responsible for paying such debts from the value of the property or from her own assets. Therefore, she could look to the estate for reimbursement for any payments made on the mortgage.

Defendant filed an answer and counterclaim claiming the applicability of *N.J.S.A.* 3B:25–1 and that plaintiff is solely and personally responsible for paying the debt as well as her share of the New Jersey transfer inheritance tax and attorney's fees.

The trial court found that the nonexoneration statute applied only to heirs and devisees, and since plaintiff was neither, repayment of the mortgage was not her responsibility. In so holding, the court characterized Zahn's act of conveying title to himself and plaintiff as joint tenants as "a gift of a property to her subject to the payment of the mortgage by Mr. Zahn." Consequently, the court ordered defendant to pay all costs associated with the note and mortgage of the Jamesburg property, and held that plaintiff

was entitled to reimbursement from defendant for any payments made on the mortgage debt. We note, however, that the conveyance could just as easily have been characterized as a gift of Zahn's net interest in the property, after the payment of the mortgage debt. This will be discussed in more detail *infra*.

According to defendant's brief (documentation of these facts was not provided), a review of the estate indicates that each of Zahn's daughters is entitled to receive $54,772.50, and plaintiff is to receive $171,465, if the gift was only of the net equity in the property. The estate also contained the proceeds of a joint bank account of $50,348, presumably passing to the daughters. Defendant contends that reimbursing plaintiff for her payments on the mortgage would bankrupt the estate, thereby excluding Zahn's daughters from any share of the estate. Thus, defendant claims that plaintiff should pay the mortgage debt out of the proceeds from the sale of the Jamesburg property which she sold for $260,000 on July 17, 1997.

There are two approaches we will take to analyze this problem. First, we will view the law of exoneration as it has developed in New Jersey; second, we will attempt to divine the testator's probable intention to see if we must remand this matter for a factual hearing. We find, however, that both approaches lead to the same result, namely, that plaintiff is not entitled to exoneration. We will explain.

Defendant contends that the common law and *N.J.S.A.* 3B:25–1 must lead us to conclude that a surviving joint tenant, who takes property that is encumbered by a mortgage securing a note on which only the deceased joint tenant was personally liable, has no right of exoneration. Defendant argues that New Jersey cases decided prior to the enactment of *N.J.S.A.* 3B:25–1 and its predecessor *N.J.S.A.* 3:26A–1, *L.* 1924, *c.* 164, § 1 restricted the right of exoneration of debts from the estate to three classes of beneficiaries: heirs, devisees, and widows asserting their right of dower in the encumbered property. *N.J.S.A.* 3B:25–1 and the earlier enactment extinguished the right of exoneration for two of the three

classes, heirs and devisees. From this, defendant concludes that because the statute did not specifically terminate the common law right of exoneration for widows claiming dower, solely their common law right of exoneration was preserved. As defendant does not fall within this protected class, she has no recognized right of exoneration.

As support for this contention, defendant traces a line of cases interpreting the common law on exoneration. First, in *Krueger v. Ferry,* 41 *N.J. Eq.* 432, 5 *A.* 452 (Ch. 1886), *aff'd,* 43 *N.J. Eq.* 295, 14 *A.* 811 (E. & A. 1887), the court considered whether creditors who purchased mortgaged property from a decedent's estate could look to it for satisfaction of the underlying mortgage debt. *Id.* at 436–37, 5 *A.* 452. In denying relief to the creditors, the court limited the right to call upon a decedent's executor to exonerate land from a mortgage debt for which the decedent was personally liable to three classes of individuals: heirs-at-law, devisees or widows. *Id.* at 437, 5 *A.* 452. In *Hill v. Hill,* 95 *N.J. Eq.* 233, 122 *A.* 818 (E. & A.1923), which again articulated our common law rule on exoneration, the Court stated that against a claim of an heir or devisee, at common law the personal estate is primarily liable for the payment of debts, and consequently, the heir-at-law or a devisee was entitled to request the executor "to exonerate the land by discharging the mortgage debt out of the personal estate." *Id.* at 235, 122 *A.* 818. The Court reasoned that because the personal estate enjoyed the funds received from the mortgage, and because historically the personal estate has been considered the natural source for debt payments, an heir or devisee could direct the executor to pay the outstanding mortgage from the personal estate. *Id.* at 235–36, 122 *A.* 818.[1] *See also Norris v. Pellinger,* 133 *N.J. Eq.* 209, 211, 31 *A.*2d 398 (Ch.1943). The Court in *In re*

---

[1] This argument, of necessity, has less logic when applied to a case, as here, of a purchase-money mortgage. No money was withdrawn from the property for the use of the mortgagor, thus benefiting his estate. Even in the case of a non-purchase-money mortgage, if the mortgage was placed on the property prior to a transfer to a third party, the logic of the *Hill* Court's reasoning also is questionable.

*Staiger,* 104 *N.J. Eq.* 149, 144 *A.* 619 (E. & A.1929), reiterated but narrowed the ruling in *Krueger* by explaining that not all widows were entitled to exoneration from a mortgage debt; rather, exoneration was applicable only to widows seeking to assert their right to dower. *Id.* at 152–53, 144 *A.* 619.[2] *Staiger* is the last statement of the rule by the highest court of this State, prior to the 1924 statute, now *N.J.S.A.* 3B:25–1.

Defendant reasons that since *N.J.S.A.* 3B:25–1 reversed the common law right to exoneration solely with respect to heirs and devisees, the only remaining individuals permitted to request an executor to exonerate real estate from mortgage debt are widows seeking to claim their right to dower. *N.J.S.A.* 3B:25–1 by its terms did not create any new right in a surviving joint tenant to qualify for exoneration of mortgage on property owned in joint tenancy. On the contrary, the nonexoneration statute preserves the common law which, after adoption of *N.J.S.A.* 3B:25–1, only recognizes exoneration for widows claiming their right to dower without mortgage encumbrances.

Plaintiff contests this analysis and maintains that the trial court correctly interpreted the plain meaning of *N.J.S.A.* 3B:25–1. According to *N.J.S.A.* 3B:25–1, when an heir or devisee takes property that is subject to a mortgage or security interest, that heir or devisee is not entitled to have the encumbrance discharged out of the ancestor or testator's estate. Instead, under *N.J.S.A.* 2A:50–2, it is the property that is primarily liable for the mortgage or secured debt, unless, as stated in *N.J.S.A.* 3B:25–1, the will of the testator expressly or impliedly directs payment of such debt. Plaintiff contends that because she neither fits within the statutory definition of an "heir" or "devisee," *N.J.S.A.* 3B:1–1, she is not subject to the statutory restrictions imposed on heirs and devisees

---

[2] We need not determine here whether the rule expressed in *Staiger* would extend, after dower and curtesy were abolished by *N.J.S.A.* 3B:28–2 as of May 28, 1980, to real estate included in a widow's elective share under *N.J.S.A.* 3B:8–1 or the principal marital residence in which a spouse has a right of joint possession under *N.J.S.A.* 3B:28–3.

under *N.J.S.A.* 3B:25–1. Consequently, plaintiff's common law right of exoneration is preserved.

This might be so if there were such a common law right to be preserved. The trial court's analysis was flawed because New Jersey cases, discussed earlier, reveal that common law exoneration was only applied to heirs, devisees and a particular class of widows. *See Staiger, supra,* 104 *N.J. Eq.* at 152–53, 144 *A.* 619; *Krueger, supra,* 41 *N.J. Eq.* at 437, 5 *A.* 452. No New Jersey case law supports the trial judge's conclusion that under the common law surviving joint tenants are entitled to request the executor of the deceased joint tenant's estate to satisfy mortgage debts on property held in joint tenancy so that title passes to the surviving joint tenant free and clear of debt.

■ The court mistakenly described the transfer of the title to plaintiff as a joint tenant as "a gift of property to her subject to the payment of the mortgage by Mr. Zahn." As noted, this simply is not the law.[3] Assuming that Zahn conveyed ownership to himself and plaintiff as joint tenants as a gift to plaintiff, she took the property subject to the mortgage. This is reiterated in *Pomeroy:* "Where a mortgagor conveys by deed absolutely silent with respect to an outstanding mortgage, the grantee, of course, takes the land encumbered by the mortgage, if he has actual notice of it, or constructive notice by record or otherwise." 4 John Norton Pomeroy, *A Treatise on Equity Jurisprudence,* § 1205, at 613 (5th ed.1941).

■ Plaintiff asserts that she did not sign the promissory note, nor, before Zahn's death, did she have any responsibility for paying the mortgage. Only Zahn, as the obligor, had such an obligation. This merely means that she is not liable for any deficiency if there were a foreclosure sale. Her not being an obligor sheds no light on the extent of the gift to her or the

---

[3] Nor is there a factual basis for the conclusion, except for plaintiff's uncorroborated account of Zahn's earlier statement to her of his intention. This will be discussed *infra.*

estate's obligation to pay the debt.[4] While plaintiff may not be personally liable for the mortgage debt, the court should have ruled that the property is the primary fund out of which this debt should be paid. As we have already noted, under New Jersey law, the mortgaged premises are the primary source of payment of a mortgage indebtedness. *N.J.S.A.* 2A:50-2. If Zahn had survived, his personal estate would be protected until the property was sold and a deficiency established. His testamentary estate should be entitled to no less protection. *Cf. Estate of Colquhoun v. Estate of Colquhoun*, 177 *N.J.Super.* 491, 496, 427 *A.*2d 87 (App.Div.1981), *modified*, 88 *N.J.* 558, 443 *A.*2d 1045 (1982).

Analysis of case law from other jurisdictions also undermines the trial judge's conclusion. In *In re Estate of Young v. Phillip*, No. A-96-423, 1997 WL 426191, at *1 (Neb.Ct.App. July 1, 1997), the facts were somewhat different from the case before us in that joint tenants had both assumed the obligation of the underlying debt, and there had also been an express direction in the decedent's will that the mortgage (deed of trust) debt be exonerated. *Id.* at *3.

In holding the estate responsible for satisfaction of the note, the court analyzed the language of the will and the attendant circumstances under which the will was made to arrive at a conclusion which embodied the testator's intent. *Id.* at *5. The court also stated the general rule concerning exoneration rights of joint tenants: "[T]he general rule is that a surviving joint tenant does not qualify for exoneration of a mortgage on joint tenancy property unless there is language in the decedent's will clearly expressing an intention that the mortgage debt be paid." *Ibid.* Because the language in the decedent's will in *Young* clearly indicated that his estate must pay all mortgage debts in his name, the court

---

[4] Whether plaintiff had actual or constructive notice of the existing mortgage is also irrelevant. By virtue of the recording act, *N.J.S.A.* 46:21-1, she is deemed to have notice.

concluded that the estate must pay the balance of the note. *Id.* at *6.

The same analysis was applied by the California Court of Appeals in *In re Estate of Dolley*, 265 *Cal.App.*2d 63, 71 *Cal.Rptr.* 56 (1968). In *Dolley*, the testator alone bought a house for himself and his wife, which he purchased, giving a promissory note secured by a deed of trust. *Id.* 71 *Cal.Rptr.* at 58–59. After the loan was granted, the residence was transferred by a joint tenancy deed. *Id.* 71 *Cal.Rptr.* at 59. When the testator died, $39,000 remained unpaid on the note. *Ibid.* After the testator's will was probated, the executors refused to discharge the trust deed encumbrance despite the wife's claim that she was entitled to the house free and clear of the encumbrance. *Ibid.*

In denying the wife's request for exoneration of the mortgage debt from the testator's estate, the court concluded that, absent language in the decedent's will clearly expressing an intent that the mortgage debt be paid, a surviving joint tenant is not entitled to exoneration of a mortgage debt on joint tenancy property. *Id.* 71 *Cal.Rptr.* at 61–62. Because the will contained only a general clause directing the executor to pay all just debts and expenses, *id.* 71 *Cal.Rptr.* at 58, and did not include express language instructing the executors to pay the mortgage indebtedness, the court refused to recognize the joint tenant's right of exoneration. *Id.* 71 *Cal.Rptr.* at 62–63. The court refused to presume that the testator intended the executors to pay the mortgage. *Id.* 71 *Cal.Rptr.* at 63. The court noted that if the testator wanted the estate to pay the mortgage, he could have easily accomplished this task "by the inclusion of not more than three words, such as 'free and clear.'" *Ibid.* Without words to the contrary, the court characterized the wife's arguments as "pure conjecture." *Ibid.*

Unlike the will in *Young*, there is no clear and unambiguous language concerning the payment of mortgages in Zahn's will. According to the will, Zahn directed that his "Executors shall pay all of my just debts and funeral expenses as soon as practicable after my death." Reference to the payment of Zahn's "just debts"

does not clearly indicate that the outstanding mortgage is included in the executor's responsibilities. Like the will in *Dolley,* Zahn's will is silent regarding satisfaction of his mortgage indebtedness. The language of the will expresses no intent on Zahn's part to order his estate to exonerate the mortgage debt on the house he shared with plaintiff.

Even analyzing Zahn's will under New Jersey's liberal probable intent doctrine cannot result in an affirmance of the trial court's decision. Under the probable intent doctrine, New Jersey courts construe wills to "ascertain and give effect to the 'probable intention of the testator.'" *Fidelity Union Trust Co. v. Robert,* 36 *N.J.* 561, 564, 178 *A.*2d 185 (1962). *See also In re Estate of Branigan,* 129 *N.J.* 324, 331–32, 609 *A.*2d 431 (1992); *Danelczyk v. Tynek,* 260 *N.J.Super.* 426, 428–30, 616 *A.*2d 1311 (App.Div.1992), and cases cited therein. In determining the testator's subjective intent, "courts will give primary emphasis to his dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding facts and circumstances." *Fidelity Union, supra,* 36 *N.J.* at 564–65, 178 *A.*2d 185. A court can "ascribe to the testator, 'those impulses which are common to human nature, and will construe the will so as to effectuate those impulses.'" *Id.* at 565, 178 *A.*2d 185.

This court has held that in ascertaining the probable intent of the testator, courts are not limited to the express language of the will and "may look to extrinsic evidence including the testator's own expressions of intent." *Danelczyk, supra,* 260 *N.J.Super.* at 430, 616 *A.*2d 1311. The use of extrinsic evidence however is limited. *Ibid.* Extrinsic evidence including a testator's direct statements has been admissible, not to vary the terms of the will, but to explain ambiguities. *Ibid.* Here, there is no ambiguity in Zahn's will. Zahn directed his executors to "pay all of my just debts and funeral expenses as soon as practicable after my death." The mortgage debt is not a "just debt" of the estate until the value of the real estate is exhausted. *N.J.S.A.* 2A:50–2. *See also In re Estate of Dolley, supra,* 71 *Cal.Rptr.* at 58–62.

Following these guidelines, the only evidence that Zahn intended defendant to pay the mortgage on the property held in joint tenancy with plaintiff is her uncorroborated statement that "decedent informed [her] that it was the decedent's intention that upon his death [she] was to become the sole owner of the house, free and clear of any liens or encumbrances." This conversation, however, was not memorialized in a change to Zahn's will, the deed conveying the property or some other writing. Moreover, proof of this statement, made before the conveyance, faces serious evidentiary problems under *N.J.R.E.* 804(b)(6) (trustworthy statements by deceased declarants), *N.J.R.E.* 803(c)(3) (then-existing mental state of a declarant), and even the Parol Evidence Rule. If the statement was made at the time of the deed, and Fichter attempted to vary the terms of the writing by adding an implied oral "free and clear of any mortgage debt" term, the parol evidence rule would bar the claim. If the statement was made before or after the deed was signed, and is claimed to vary Zahn's will, the statement would be akin to a will amendment, outside of the scope of *N.J.S.A.* 3B:3-2. It is also outside of the declaration of mental state evidence rule which specifically excludes statements relating "to the ... terms of declarant's will." *N.J.R.E.* 803(c)(3). There is also a serious question of the trustworthiness of the statement under *N.J.R.E.* 804(b)(6), as it is extremely self-serving, and in any event relates solely to decedent's intention at the time of the statement, not at the time of transfer. The relevant intention under *Fidelity Union* and its progeny is the state of mind when the will was executed.

According to defendant, requiring the estate to pay the mortgage would bankrupt the estate, "leaving nothing for the decedent's children," and giving plaintiff a total gain of approximately $289,500. These alleged monetary facts do not appear to be disputed, and they strengthen the argument that Zahn did not intend his executors to pay the mortgage on the joint tenancy property. It therefore seems reasonable to believe that Zahn would not have intended, when he signed his will, to have bankrupted his estate to satisfy the mortgage debt if he later trans-

ferred his real estate to a joint tenant. More importantly, if Zahn intended the estate to pay the mortgage, he would have included that directive in a codicil to his will or in some other operative writing such as the deed by simply stating that plaintiff takes the residence "free and clear" of the mortgage. Without such concrete language, it is difficult if not impossible to determine that Zahn would have bequeathed his entire estate to his daughters, yet have intended to give them nothing if the real estate was later transferred to a joint tenant.

Despite plaintiff's strained arguments, the probable intent doctrine also guides us to reverse and remand the matter to the trial court. The issue of Zahn's intention need be revisited by the trial judge only if plaintiff can come forward with some additional evidence of decedent's intention to exonerate her from the payment of the mortgage debt. Otherwise, the trial court should determine the monetary amount necessary to satisfy the mortgage debt and order the debt to be paid out of the proceeds from the sale of the residence.

In sum, we determine that *N.J.S.A.* 3B:25–1 does not by implication require exoneration of a joint tenant whose interest was a gift from a decedent who was the sole obligee on the mortgage debt. The facts alleged at this stage of the proceeding also show no probable intent of Zahn effectively to disinherit his daughters in favor of plaintiff.

Reversed and remanded for further proceedings in accordance with this opinion.