OSCN Found Document:IN THE MATTER OF THE ESTATE OF CARLSON

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN THE MATTER OF THE ESTATE OF CARLSON
2016 OK 6
Case Number: 110720
Decided: 01/20/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 6, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE ESTATE OF: CAROL JEAN CARLSON

DEBRA GLOVER, PERSONAL REPRESENTATIVE OF THE ESTATE OF CAROL JEAN CARSON, Appellant,
v.
CLIFFORD CORNISH, FARM CREDIT SERVICES and ELDIN LEWIS, Appellees.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION IV

¶0 A grantor executed transfer-on-death deeds for two properties. Both properties were subject to mortgages, securing promissory notes executed by the grantor. Shortly after executing the transfer-on-death deeds, the grantor died. The grantees and one of the lenders filed creditors' claims against the decedent grantor's estate asserting the debt secured by the mortgages on the two properties was a liability of the estate. The personal representative denied the claims. The grantees and lender filed ancillary petitions on claims. In an order determining the extent of the estate's liability, the trial court determined that the claims were liabilities of the estate to be paid by the personal representative in the due course of administration. The personal representative appealed and the Court of Civil Appeals reversed. This Court granted certiorari.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF 
CIVIL APPEALS VACATED; ORDER OF THE TRIAL COURT 
AFFIRMED

Randall Allen Gill and Jeff K. Rhodes, Tulsa, OK, for Appellant Debra Glover.
Brent D. Coldiron, Oklahoma City, OK, for Appellees Clifford Cornish and Eldin Lewis.
Victor Eric Morgan, Tulsa, OK, for Appellee Farm Credit Services.

COMBS, V.C.J.: 

¶1 At issue in this cause is whether the estate of a deceased grantor of mortgaged properties conveyed by transfer-on-death deed is liable for the underlying debt, when the grantor's will contained express instructions for the payment of all debts secured by mortgages. We determine that it is.

I.
FACTS AND PROCEDURAL HISTORY

¶2 Carol Jean Carlson (Decedent) learned she was terminally ill in 2011, and retained an attorney to assist her in planning the disposition of her estate (Estate). On August 24, 2011, Decedent executed three transfer-on-death deeds (TODDs) pursuant to the Nontestamentary Transfer of Property Act (NTPA), 58 O.S. 2011 §§ 1251-1258 for real property she owned, as well as a Last Will and Testament. One of the pieces of real property transferred via TODD went to Debra Glover-- who was later appointed Personal Representative of the Estate--and is not at issue in this appeal. The first of the other two TODDs named Appellee Clifford Cornish (Cornish) as grantee and the second named Eldin Lewis (Lewis). For purposes of this opinion, Appellees Cornish and Lewis will be collectively referred to as Grantees. Decedent died on August 29, 2011, five days after executing the TODDs and her Last Will and Testament.

¶3 The TODD to Lewis concerns the following parcel:

[a] tract of land being a part of the South Half (S/2) of the Northeast Quarter (NE/4) of Section Five (5), Township Twelve (12) North, Range One (1) West of the Indian Meridian, Oklahoma County, Oklahoma . .

TODD to Eldin B. Lewis, R. 285.

Prior to Decedent's estate planning and the execution of the TODD, Decedent executed a promissory note in the amount of $140,224.35 on December 19, 2006, in favor of The Margee and Robert W. Minter Living Trust (Trust). R. 241. This note was secured by a mortgage, filed December 21, 2006, which encumbered the property conveyed to Lewis via the TODD. Mortgage of Real Estate, R. 242. Lewis timely accepted the TODD. On December 7, 2011, Lewis filed a proof of claim with the Personal Representative for the remaining debt in the amount of $123,530.09. The Personal Representative rejected Lewis' claim on December 16, 2011. Notice of Rejection of Creditor's Claim, R. 74

¶4 The TODD to Cornish concerns a 31-acre parcel of real property in Oklahoma County described as:

[a]ll that part of the West Half (W/2) of Section Thirty-Three (33), Township Fourteen (14) North, Range One (1) East of the Indian Meridian, Oklahoma County, Oklahoma, that lies West of the S.L. & S.F. Railroad right-of-way and South of Hogback road (sometimes referred to as Jones Spencer road).

Transfer on Death Deed to Clifford Earl Cornish, R. 59.

Previously, on May 27, 2007, Decedent executed a note and security agreement in favor of Appellee Farm Credit Services (FCS) in the amount of $96,000.00. The note is secured by a mortgage in favor of FCS executed on the same day and filed on May 29, 2007. A second note and security agreement, amending the first, were executed on September 16, 2010, for the amount of $83,778.60.

¶5 The record contains a letter from the Personal Representative's attorney dated November 2, 2011, advising Cornish that the property he was to receive through the TODD was subject to a mortgage. The letter noted the language of 58 O.S. 2011 § 1255(B), stated that the mortgage remained attached to the land, that the owner of the land remains responsible for paying it, and provided an enclosed disclaimer for Cornish to sign if he desired not to accept ownership of the property. Letter to Clifford Earl Cornish, R. 72-73.

¶6 Cornish instead decided to accept ownership of the parcel conveyed by the TODD, and signed an affidavit to that effect on December 4, 2011. During probate of the Estate, Cornish filed a creditor's claim against the Estate arguing that the note, security agreement, and mortgage were all executed by Decedent and the debt is the Estate's alone, citing a pay all debts provision in Decedent's Last Will and Testament. Claim of Clifford Earl Cornish, R. 79. The Personal Representative rejected Cornish's claim on December 16, 2011. FCS also filed a creditor's claim with the Personal Representative, for the amount of the note secured by the mortgage on the property granted to Cornish. FCS asserted that the full amount was due and payable under the terms of the note. The Personal Representative rejected this claim on December 22, 2011. The record indicates FCS has begun foreclosure proceedings on the property securing the note, taken by Cornish pursuant to the TODD.

¶7 FCS filed its Ancillary Petition on Claim on January 9, 2012. Grantee Cornish filed his Ancillary Petition on Claim on January 10, 2012. On January 10, 2012, the Personal Representative filed an Application for Order Determining the Extent of the Estate's Liability concerning the claims of Grantee Cornish and FCS. On January 27, 2012, Grantee Lewis filed his own Ancillary Petition on Claim. The Personal Representative filed a second Application for Order Determining Extent of Estate's Liability on February 3, 2012, concerning Grantee Lewis' claim.

¶8 On April 6, 2012, the trial court entered an order granting the Appellees' petitions, approving the ancillary claims, and finding the mortgages and notes to be liabilities of the Estate. The Personal Representative filed a Petition in Error on May 25, 2012. On appeal, Personal Representative contends the trial court erred as a matter of law by allowing the creditors' claims of Grantees and FCS because : 1) allowing the claims was contrary to the express language of 58 O.S. 2011 § 1255(A) and the purpose of the NTPA; 2) the trial court lacked jurisdiction because TODDs are nontestamentary instruments that may not be revoked by will; and 3) the intent/language of Decedent's Last Will and Testament was insufficient to override the provisions of the NTPA without express, specific language requiring payment.

¶9 The Court of Civil Appeals, in an opinion filed on June 11, 2015, reversed the decision of the trial court and remanded for further proceedings. The Court of Civil Appeals determined that Grantees did not have standing to pursue creditors' claims against the Estate to satisfy the notes and mortgages on their respective properties. Further, the Court of Civil Appeals determined that while FCS possessed standing as the holder of a note and mortgage, the trial court prematurely granted FCS' claim because FCS was required to foreclose on the property, obtain a deficiency judgment, and only then present a claim to the Estate for payment.

¶10 Grantees filed their Petition for Certiorari on June 24, 2015, asserting the Court of Civil Appeals decided a question of substance not heretofore determined by this Court. We granted certiorari on October 26, 2015, and the cause was assigned to this office on October 27, 2015.

III.
STANDARD OF REVIEW

¶11 Probate proceedings are of equitable cognizance. In re Estate of Holcomb, 2002 OK 90, ¶8, 63 P.3d 9; In re Estate of Sneed, 1998 OK 8, ¶8, 953 P.2d 1111. Although this Court will examine and weigh the evidence, there is a presumption that the trial court's decision is legally correct and cannot be disturbed unless found to be clearly contrary to the weight of the evidence or to some governing principle of law. In re Estate of Speers, 2008 OK 16, ¶8, 179 P.3d 1265; In re Estate of Holcomb, 2002 OK 90, ¶8. If legally correct, the trial court's ruling will not be reversed because of faulty reasoning, an erroneous finding of fact, or consideration of an immaterial issue. In re Estate of Speers, 2008 OK 16, ¶8; In re Estate of Holcomb, 2002 OK 90, ¶8; In re Estate of Maheras, 1995 OK 40, ¶7, 897 P.2d 268.

IV.
ANALYSIS

A. The Trial Court Correctly Determined Appellees' Claims Are Liabilities of the Estate

¶12 The first question we must answer is whether the trial court erred when it determined the notes, secured by mortgages on the land transferred to Grantees, are liabilities of the Decedent's estate. We hold that it did not.

1. Decedent's intent, as expressed by her Last Will and Testament and the TODDs, was for her estate to pay all of her debts, including those secured by mortgages on the properties transferred to Grantees via TODD.

¶13 Of paramount importance in a probate proceeding is discerning and implementing a decedent's intent. Title 84 O.S. 2011 § 151 provides: "[a] will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." Amongst other provisions, Decedent's Last Will and Testament contains the following directive concerning her debts:

2. PAYMENT OF DEBTS: I hereby direct that all my debts, including the expenses of my last illness and burial and the expenses of administration of my estate, be paid by my executor except that the payment of any debts secured by mortgage or pledge of real or personal property may be postponed until payable by its terms.

Last Will and Testament of Carol Jean Carlson, R. 1.

It is undisputed in this cause that the TODDs and Decedent's Last Will and Testament were executed on the same day and conceived as a single estate plan. Pursuant to 84 O.S. 2011 § 154, "[s]everal testamentary instruments, executed by the same testator, are to be taken and construed together as one instrument."

¶14 The TODDs at issue in this cause are nontestamentary instruments, authorized by the Nontestamentary Transfer of Property Act (NTPA), 58 O.S. §§ 1251-1258. Specifically, 58 O.S. 2011 § 1258 provides: "[a] deed in transfer-on-death form, executed in conformity with the Nontestamentary Transfer of Property Act, shall not be considered a testamentary disposition and shall not be invalidated due to nonconformity with other provisions in Title 58 or Title 84 of the Oklahoma Statutes." Even so, though the TODDs are nontestamentary in that they need not comply with other provisions of Title 58 or Title 84, nothing in the NTPA prevents the TODDs from being examined with Decedent's simultaneously executed testamentary instruments to determine Decedent's intent in this instance. Because all of the instruments in question were executed on the same day and as part of a comprehensive plan, this Court will interpret them together in order to discern Decedent's intent.[1] Discerning Decedent's intent is the emphasis of the entire probate process. In re Estate of Sneed, 1998 OK 8, ¶8, 953 P.2d 1111; In re Estate of Holcomb, 2002 OK 90, ¶8, 63 P.3d 9; Miller v. First National Bank & Trust Co., 1981 OK 133, ¶8, 637 P.2d 75.

¶15 The unambiguous debt-payment provision of Decedent's Last Will and Testament, along with the TODDs, indicate Decedent's intent was that the notes secured by the mortgages on the properties conveyed to Grantees by TODD be paid by Decedent's estate. This determination is further supported by the affidavit of Jeff A. Eulberg, Decedent's friend and the attorney who assisted Decedent with the planning of her estate, including the preparation of her Last Will and Testament and the TODDs. Attorney Eulberg's affidavit provides in pertinent part:

3. She contacted me to help her with distributing her property at her death through her will and using transfer-on-death-deeds. She told me that she wanted to give her friends some property. She told me that she intended to sell her mobile home park and use that money to pay off what she owed on her other property. Unfortunately her cancer progressed too rapidly. She died before she could sell the mobile home park.

4. By August 24, 2011 she believed that she didn't have much time left. On August 24th, 2011 I prepared her will and some remaining transfer-on-death deeds. Her will and transfer-on-death deeds were read to her. I also explained the will and transfer-on-death deeds to her. The documents were then executed, witnessed and notarized as required by law. The will which I prepared and she signed is the same will admitted into probate in this case. .

5. At no time did she tell me that she did not want all of her debts paid. The will I prepared, which she signed, complied with her wishes.

Affidavit of Jeff A. Eulberg, R. 295.

¶16 Decedent's Last Will and Testament contains an explicit provision for payment of debts, including those secured by mortgages on real property, which she intended cover the notes secured by the properties transferred to Grantees. Title 58 O.S. 2011 § 461 concerns will provisions for payment of debts, and states:

[i]f the testator makes provisions by his will or designates the estate to be appropriated for the payment of his debts, the expenses of administration, or family expenses, they must be paid according to such provisions or designation, out of the estate thus appropriated, so far as the same is sufficient.

Normally, when a decedent's real property secured by mortgage passes to successors, 58 O.S. 2011 § 461 operates in concert with another statutory provision, 46 O.S. 2011 § 5, which provides:

[w]hen real property, subject to a mortgage, passes by succession or will, the successor or devisee must satisfy the mortgage out of his own property, without resorting to the executor or administrator of the mortgagor, unless there is an express direction in the will of the mortgagor that the mortgage shall be otherwise paid.

When real property subject to a mortgage passes by succession or will, so does responsibility for satisfying the mortgage--pursuant to 46 O.S. 2011 § 5-- unless, in accordance with 58 O.S. 2011 § 461, the testator made specific provisions in the will for payment to be made some other way.

¶17 However, 46 O.S. 2011 § 5 is not applicable in this cause, as the properties conveyed to Grantees by the TODDs did not pass by succession or will. Instead, at issue is the interaction of 58 O.S. 2011 § 461 and the payment-of-debts clause in Decedent's will, with a specific section of the NTPA, 58 O.S. 2011 § 1255(A), which provides:

[g]rantee beneficiaries of a transfer-on-death deed take the interest of the record owner in the real estate at the death of the grantor owner, free and clear of any claims or interest under Section 44 of Title 84 of the Oklahoma Statutes as to a person who became the spouse of the grantor subsequent to the execution of the transfer-on-death deed, subject to all recorded conveyances, assignments, contracts, mortgages, liens and security pledges made by the record owner or to which the record owner was subject during the lifetime of the record owner including, but not limited to, any recorded executory contract of sale, option to purchase, lease, license, easement, mortgage, deed of trust or lien, and to any interest conveyed by the record owner that is less than all of the record owner's interest in the property, provided however, a non-consensual lien against the grantee beneficiary shall not attach to the property until the recording of the affidavit described in Section 1252 of this title.

Appellant asserts 58 O.S. 2011 § 1255(A) conflicts with 58 O.S. 2011 § 461 and the intent of Decedent expressed in her Last Will and Testament.

2. The NTPA does not conflict with or defeat Decedent's intent that the debts represented by Appellees' claims be paid by the Estate.

¶18 Pursuant to 58 O.S. 2011 § 1255(A), Grantees took the interest of Decedent in the respective properties at the time of Decedent's death. They took this interest "subject to all recorded conveyances, assignments, contracts, mortgages, liens and security pledges made by the record owner." Title 58 O.S. 2011 § 1255(A). By the plain terms of the statute, Grantees each took the properties subject to the mortgages attached to them. Those mortgages serve as security for the notes originally executed between Decedent and her lenders, Farm Credit Services and The Margee and Robert W. Minter Living Trust. Title 58 O.S. 2011 § 1255(A) does not, by its own terms, provide that Grantees assumed liability for any of Decedent's underlying debt. Rather, Grantees took the property subject to the security for that debt: the mortgages.

¶19 In Oklahoma, a mortgage does not operate as a conveyance vesting in the mortgagee any estate in realty. First Mustang State Bank v. Garland Bloodworth, Inc., 1991 OK 65, ¶33, 825 P.2d 254; Coursey v. Fairchild, 1967 OK 252, ¶7, 436 P.2d 35. Rather, it creates a lien against the realty in order to secure the payment of a debt. First Mustang State Bank, 1991 OK 65, ¶33; Coursey, 1967 OK 252, ¶7. Generally, no personal obligation rests on a purchaser of mortgaged land to pay mortgage debt. Parlette v. Equitable Farm Mortgage Co., 1933 OK 478, ¶7, 25 P.2d 300; Bailey v. State, 1919 OK 49, ¶4, 179 P. 615.[2]

¶20 Where a mortgagor conveys mortgaged land to a grantee who assumes and agrees to pay the mortgage debt, the grantee becomes the principle obligor of the mortgage debt and mortgagor his surety. Stalcup v. Easterly, 1960 OK 39, ¶9, 351 P.2d 735. However, nothing in the record in this cause indicates Grantees assumed or agreed to pay the notes secured by the mortgages, even though they were aware of the notes. Pursuant to 58 O.S. 2011 § 1255(A), therefore, Grantees took title to the properties in question subject to the mortgages encumbering the properties, but assumed no liability for the debt. This result is consistent with 58 O.S. 2011 § 461, and the expressed intent of Decedent's Last Will and Testament.

¶21 The NTPA is a comparatively new piece of legislation, and there is therefore little precedent concerning TODDs. However, conveyance of property by TODD shares important similarities with property held in joint tenancy. As this Court previously noted:

[i]t is well-settled law that a joint tenancy, in either real or personal property, "creates a present estate which, absent severance during the life of the joint tenants, assures the surviving tenant absolute ownership of the whole subject matter of the joint tenancy." Toma, 2007 OK 52, ¶ 11, 163 P.3d at 544. Upon a joint tenant's death, the decedent's interest terminates and the surviving tenant's interest simply continues. Clovis v. Clovis, 1969 OK 170, ¶ 16, 460 P.2d 878, 881. By operation of law, the surviving tenant becomes immediately vested with the property as a whole, and the joint tenancy property is excluded from the decedent's estate. Toma, 2007 OK 52, ¶ 11, 163 P.3d at 544. Therefore, there is no property interest remaining that a decedent's beneficiary may inherit. See Draughon, 1948 OK 81, ¶ 9, 200 Okla. 198, 191 P.2d at 923.

In re Estate of Metz, 2011 OK 26, ¶8, 256 P.3d 45. Though there are obvious differences, the similarities were set out succinctly by the Court of Appeals of Kansas in In re Estate of Roloff, 143 P.3d 406 (Kan. Ct. App. 2006). The court noted:

[a] TOD deed has many of the same survivorship characteristics as a joint tenancy deed. These characteristics are as follows: (a) that the record owner's interest automatically transfers to the grantee beneficiary upon the death of the record owner, K.S.A. 59-3501(a) and K.S.A. 59-3504(a); (b) that no other action or procedure is required to transfer full title to the grantee beneficiary, K.S.A. 59-3501(a) and K.S.A. 59-3504; (c) that any attempt by the record owner to revoke or convey the record owner's interest in real estate subject to a TOD deed by the record owner's will is invalid, K.S.A. 59-3503(c); (d) that because title in the real estate vests immediately in the grantee beneficiary upon the death of the record owner under K.S.A. 59-3501(a) and K.S.A. 59-3504(a), the real estate is not included in the record owner's probate estate; and (e) that the transfer of the real estate by a TOD deed is not testamentary in nature under K.S.A. 59-3507, and is not subject to the provisions of the probate code.

In re Estate of Roloff , 143 P.3d at 413.

¶22 Given the similarities, cases from other jurisdictions with similar facts are illustrative. In In re Estate of Charles A. Zahn, 305 N.J. Super. 260, 270-71, 702 A.2d 482 (1997), the decedent died testate with instructions in his will that the executor "pay all of [his] just debts and funeral expenses as soon as practicable after [his] death." Prior to his death, the decedent had executed a joint tenancy deed for his residence, which was encumbered by a mortgage. The survivor of the joint tenancy paid the debt secured by the mortgage on the residence to prevent foreclosure and sought exoneration from the estate. The New Jersey Supreme Court found that the "just debts" language was not sufficiently specific to indicate that the decedent intended the estate be liable for the mortgage. The Court noted that if the testator wanted the estate to pay the mortgage, he or she could have accomplished this by including specific language such as "free and clear." The Court cited A Treatise on Equity Jurisprudence, which states that "[w]here a mortgagor conveys by deed [and is] absolutely silent with respect to an outstanding mortgage, the grantee, of course, takes the land encumbered by the mortgage." In re Estate of Charles A. Zahn, 305 N.J. Super. at 271 (quoting 4 John Norton Pomeroy, A Treatise on Equity Jurisprudence, § 1205, at 613 (5th ed.1941)).

¶23 Similarly, the California Court of Appeals found that, where the deceased held a property in joint tenancy with another, his direction in his will to pay his "just debts" was not sufficient to indicate the intention that the mortgage be a liability of the estate. In re Estate of Roy P. Dolley, 265 Cal.App.2d 63 (1968). The court noted that "[f]oreign authority exists to the effect that a surviving joint tenant does not qualify for exoneration of a mortgage on joint tenancy property unless there is language in the decedent's will clearly expressing an intention that the mortgage debt be paid." In re Estate of Roy P. Dolley, 265 Cal.App.2d at 72.

¶24 These cases indicate that where a will clearly and unambiguously provides for the payment of a debt secured by mortgage, such direction should be followed, despite the transfer of property ownership occurring outside of probate. Personal Representative points to the above cases as support for the contention that the debt is not a liability of the estate, arguing that Decedent's will "did not contain express language to require the payment of the mortgages transferred under the Non-Testamentary Transfer on Death Deed statutes." However, this case is distinguishable factually from the cases discussed above, as Decedent's will did not merely refer to "just debts" and, in fact, did specify the payment of debts secured by mortgages: "I hereby direct that all my debts . . . be paid by my executor, except that the payment of any debt secured by mortgage or pledge or real or personal property may be postponed until payable by its terms." This language specifically addresses debts secured by mortgages and provides unambiguous direction for payment. Thus, these directions should be followed, even if the underlying property subject to the mortgages as security for the debt was transferred outside of probate by TODD.[3]

B. Appellees Possess Standing to Assert Their Claims

¶25 Having determined that the trial court correctly ruled the debts set out in Appellees' creditors' claims are liabilities of the Estate, this Court must now consider whether Appellees possessed standing to assert those claims.[4] The Court of Civil Appeals determined Grantees did not have standing, holding:

[w]e interpret the will's language to mean that satisfaction of "any debts secured by mortgage or pledge of real or personal property" need not be immediate. Rather, satisfication "may be postponed until payable by its terms." This means a secured debt may be collected by a creditor or mortgage holder entitled to collect that debt from the Estate using any remedies available to that creditor by law or under the terms of that secured debt. However, those remedies are not available to Grantees because they are neither parties to the debt, creditors of the Estate, nor proper parties to enforce payment of the debt secured by their real property which had been formerly owned by Estate. Grantees may not use the terms of Decedent's will to compel Estate to act to satisfy the debt on their properties. That right belongs to the actual owners of those secured debts, who alone have standing to present a creditor's claim.

Opinion of the Court of Civil Appeals, ¶29.

The Court of Civil appeals further concluded that even the actual creditors of the estate, such as FCS, must obtain a deficiency judgment post-foreclosure first, and only then submit a claim to the estate for payment. Opinion of the Court of Civil Appeals, ¶30. We disagree.

1. FCS was not required to foreclose and only afterwards file a creditor's claim limited to the amount of any deficiency judgment

¶26 Concerning the timeliness and nature of FCS' claim, 58 O.S. 2011 § 461 requires that debt-related provisions in wills be followed, and that payment be made according to the specifications of those provisions. Decedent's will provides that "payment of any debts secured by real or personal property may be postponed until payable by its terms." This language should not be construed to require the creditor to first foreclose, apply the proceeds of the sale to the debt, and then obtain a deficiency judgment to present to the estate. The will calls for payment of the debt on its terms, not for reimbursement post-default. As the dissent in the Court of Civil Appeals Opinion correctly notes, it is clear from this language that Decedent not only intended the estate to pay the debts represented by the notes to FCS and the Trust, but also intended to give the estate some flexibility in doing so, either in continued installments or as one lump sum. Forcing foreclosure followed by a deficiency judgment would frustrate the entire purpose of Decedent's combined use of the TODDs along with the debt payment provision of her will: for the Grantees to take the property with the debt paid by the Estate.

¶27 Further, nothing in the relevant statutes or this Court's prior jurisprudence requires the holder of a note secured by mortgage on real property to initiate foreclosure proceedings prior to filing a claim against the estate for underlying debt. Title 58 O.S. 2011 § 333 (emphasis added) provides:

[a]ll claims arising upon contracts entered into prior to the decedent's death, whether the same be due, not due or contingent, must be presented on or before the presentment date as provided in the notice, and any claim not so presented is barred forever; provided, however, that when it is made to appear by the affidavit of the claimant, to the satisfaction of the personal representative and the judge of the district court, as duly noted on the claim, that the claimant had no notice by reason of being out of the state and that a copy of the notice to creditors was not mailed to said claimant, the claim may be presented at any time before a final decree of distribution is entered; provided, further, that nothing in this section, nor in this chapter contained, shall be construed to prohibit the right or limit the time of foreclosure of mortgages upon real property of decedents, but every such mortgage may be foreclosed within the time and in the mode prescribed in civil procedure, except that no balance of the debt secured by such mortgage remaining unpaid after foreclosure shall be a claim against the estate, unless such debt was presented as required by this code.

The emphasized portion of 58 O.S. 2011 § 333 unambiguously creates a simple rule: filing a creditor's claim against the estate is not a condition precedent in order for a creditor secured by a mortgage on real property to foreclose. However, 58 O.S. 2011 § 333 does not allow a creditor to pursue a deficiency judgment after foreclosure, unless a claim was presented to the estate pursuant to the probate code.

¶28 This Court explained the relevant portion of 58 O.S. 2011 § 333 in Cahill v. Kilgore, 1960 OK 88, ¶10, 350 P.2d 928:

[u]nder the above quoted exception, plaintiff clearly had the right to foreclose the mortgage in controversy without first presenting to defendant in her representative capacity a claim based upon the note securing the mortgage or the mortgage. In her brief plaintiff makes this statement and concession: 'There is no question here about a deficiency judgment in this case. It could only arise if presented to the County Court after the foreclosure. Under the above proviso we had the right to proceed by foreclosure without presenting claim to administrator. We waived that right and chose to rely on our mortgage.' In view of the fact that an action to foreclose a mortgage may be maintained without seeking a personal judgment (Irwin v. Sands, Okl., 265 P.2d 1097) and in view of the further fact that plaintiff is not here asserting the right to recover a deficiency from Dick Cahill's estate, we are of the opinion that defendant's first contention is not well taken.[5]

While FCS was certainly permitted by 58 O.S. 2011 § 333 to initiate foreclosure proceedings without presenting a claim based upon its note to Decedent's estate, it was not required to do so. Instead, FCS chose to seek payment of the due note[6] pursuant to its terms by filing a creditor's claim against Decedent's estate. The right of FCS to present a creditor's claim prior to foreclosing is therefore established. The only question remaining is that of Grantees' standing.

2. Grantees possessed standing to assert their claims before the trial court

¶29 Standing refers to a person's legal right to seek relief in a judicial forum. Fent v. Contingency Review Bd., 2007 OK 27, ¶7, 163 P.3d 512; Hendrick v. Walters, 1993 OK 162, ¶4, 865 P.2d 1232. The three threshold criteria of standing are (1) a legally protected interest which must have been injured in fact--i.e., suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision. J.P. Morgan Chase Bank Nat. Ass'n v. Eldridge, 2012 OK 24, ¶7, 273 P.3d 62; Fent, 2007 OK 27, ¶7. The Standing doctrine should never be applied mechanistically to bar from the courthouse those who are truly aggrieved. Application of Southwestern Bell Telephone, L.P., 2007 OK 55, ¶5, 164 P.3d 150.

¶30 Grantees both possess interests in real property encumbered by mortgages. Those mortgages secure debt that is a liability of Decedent's Estate. Failure of the Estate to pay that debt will subject Grantees to foreclosure of their respective properties, an action for which has already been filed concerning Grantee Cornish's property. The injury to Grantees if the Estate's liability for the debt is not recognized is concrete, not conjectural. Grantees' injury is a direct result of the Personal Representative's denial of their claims, and is capable of being redressed by the court's decision that the debts secured by their properties must be paid by Decedent's estate. This Court has also stated that a litigant must have a personal stake in the outcome. Hendrick v. Walters, 1993 OK 162, ¶5, 865 P.2d 1232; Indep. School Dist. No. 9 of Tulsa County v. Glass, 1982 OK 2, ¶8, 639 P.2d 1233. Grantees possess such a personal stake: if the debt is not recognized as that of the Estate, they must pay it themselves or lose their property.

¶31 The claim of Grantee Cornish specifically states it was filed to protect his right to be equitably subrogated and potentially recover against the estate because of the threat of foreclosure on his property arising directly from the Estate's prior refusal to recognize its obligation to pay the note. Claim of Clifford Earl Cornish, R. 79. Likewise, the claim of Grantee Lewis was made to protect his ownership of his property by obtaining confirmation from the court of the estate's obligation to pay the note secured by mortgage on his property. Proof of Claim, R. 76.

¶32 The doctrine of equitable subrogation is a creature of equity intended to achieve the natural justice of placing the burden where it ought to rest. In re Estate of MacFarline, 2000 OK 87, ¶31, 14 P.3d 551; Republic Underwriters Ins. Co. v. Fire Ins. Exchange, 1982 OK 67, ¶6, 655 P.2d 544, 547. It is unlike a fixed rule of law; instead, equitable subrogation is pliable and capable of being molded to attain justice to compel the ultimate discharge of a debt or obligation by the party who in good conscience ought to pay it. In re Estate of MacFarline, 2000 OK 87, ¶31; Republic Underwriters Ins. Co., 1982 OK 67, ¶6. Grantees sought legal recognition during the probate process of the Estate's liability for notes secured by mortgages on their real property, in accordance with Decedent's intent. Given the circumstances of this case, it is the opinion of this Court that they had standing to do so.

CONCLUSION

¶33 The emphasis of the entire probate process is to discern and effectuate a decedent's dispositive intentions. Matter of Estate of Sneed, 1998 OK 8, ¶8, 953 P.2d 1111; Miller v. First Nat. Bank & Trust Co., 1981 OK 133, ¶8, 637 P.2d 75. It was Decedent's intent that her debts secured by mortgage or pledge of real or personal property be paid, including the debts secured by the properties transferred to Grantees via TODDs. The trial court properly determined that Decedent's estate is liable for the debts secured by the mortgages on Grantees' real property. The trial court's decision was within its probate jurisdiction and did not conflict with the provisions of the Nontestamentary Transfer of Property Act (NTPA), 58 O.S. 2011 §§ 1251-1258. Appellees possessed standing to assert their claims and FCS' claim was not premature.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF 
CIVIL APPEALS VACATED; ORDER OF THE TRIAL COURT 
AFFIRMED

REIF, C.J., COMBS, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, COLBERT, and GURICH, JJ., concur.

TAYLOR, J., concurs in result.

FOOTNOTES

[1] See Title 15 O.S. 2011 § 158 ("Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.").

This Court's interpretation of 15 O.S. 2011 § 158 also allows for situations in which the contracts were not executed at substantially the same time and/or do not reference each other. In Pauly v. Pauly, this Court construed together a deed to real estate and an agreement regarding the reservation of oil and gas rights, stating:

Where several instruments are made a part of one transaction, they will be read together, and each will be construed with reference to the other. This is true, although the instruments do not in terms refer to each other. So if two or more agreements are executed at different times as parts of the same transaction they will be taken and construed together.

1946 OK 336, ¶16, 176 P.2d 491 (quoting 17 C.J.S., Contracts, § 298) (emphasis added).

[2] This cause concerns liability for notes secured by mortgaged real property after the real property has been transferred, and is therefore distinct from situations where the note itself has changed hands. Assignment of the note itself necessarily carries with it assignment of the mortgage, and assignment of the mortgage without the note is a nullity. CPT Asset Backed Certificates, Series 2004-EC1 v. Cin Kham, 2012 OK 22, ¶¶7-8, 278 P.3d 586; BAC Home Loans Servicing, L.P. v. White, 2011 OK CIV APP 35, ¶10, 256 P.3d 1014.

[3] With regard to Appellant's point of error concerning jurisdiction: the trial court was within its probate jurisdiction to consider Appellees' claims, regardless of the nontestamentary status of TODDs. Appellees' claims concern Decedent's Last Will and Testament and whether it requires Decedent's Estate to pay certain of Decedent's debts. Such claims are squarely within the probate jurisdiction of the trial court. 58 O.S. 2011 § 1.

[4] Standing, very much like jurisdiction, must be inquired into sua sponte. Fent v. Contingency Review Bd., 2007 OK 27, ¶7, 163 P.3d 512. The Court of Civil Appeals found the issue of Appellees' standing to be dispositive. An analysis of Appellees' standing by this Court is warranted.

[5] The Court in Cahill examined 58 O.S. 1951 § 333, a prior incarnation of the statute. The operative language, however, remains fundamentally unchanged.

[6] A contingent claim and subsequent suit based upon a note not yet due is also permitted. In Anderson v. Merriott, 1976 OK 74, ¶8, 550 P.2d 1320, this Court explained:

[58 O.S. § 339] recognizes an unmatured debt is entitled to the same protection and remedies as one which is due before the death of the debtor. A claim against the estate of a deceased person for an unmatured debt is sufficient if it fully advises the administrator the nature and amount of the demand and sets forth the particulars of such claim. If the claim is properly presented and is rejected, the holder thereof may bring suit thereon in the proper court. Commercial Inv. Trust v. Harsha, 116 Okl. 140, 243 P. 955 (1926). Also see In re Travis' Estate, 186 Okl. 223, 97 P.2d 50 (1939).






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2011 OK CIV APP 35, 256 P.3d 1014, BAC HOME LOANS SERVICING, L.P. v. WHITE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1998 OK 8, 953 P.2d 1111, 69 OBJ 482, IN THE MATTER OF THE ESTATE OF SNEED
Discussed at Length
 1939 OK 517, 97 P.2d 50, 186 Okla. 223, In re TRAVIS' ESTATE
Discussed
 1991 OK 65, 825 P.2d 254, 62 OBJ 2087, First Mustang State Bank v. Garland Bloodworth, Inc.
Discussed at Length
 1993 OK 162, 865 P.2d 1232, 65 OBJ 33, Hendrick v. Walters
Discussed at Length
 1953 OK 383, 265 P.2d 1097, IRWIN v. SANDS
Cited
 1946 OK 336, 176 P.2d 491, 198 Okla. 156, PAULY v. PAULY
Discussed
 1919 OK 49, 179 P. 615, 72 Okla. 203, BAILEY v. STATE
Discussed
 1960 OK 88, 350 P.2d 928, CAHILL v. KILGORE
Discussed
 1960 OK 39, 351 P.2d 735, STALCUP v. EASTERLY
Discussed
 2000 OK 87, 14 P.3d 551, 71 OBJ 2901, IN RE MACFARLINE
Discussed at Length
 1933 OK 478, 25 P.2d 300, 165 Okla. 155, PARLETTE v. EQUITABLE FARM MORTGAGE CO.
Discussed
 1967 OK 252, 436 P.2d 35, COURSEY v. FAIRCHILD
Discussed at Length
 1995 OK 40, 897 P.2d 268, 66 OBJ 1417, Matter of Estate of Maheras
Discussed
 1969 OK 170, 460 P.2d 878, CLOVIS v. CLOVIS
Discussed
 2002 OK 90, 63 P.3d 9, IN THE MATTER OF THE ESTATE OF HOLCOMB
Discussed at Length
 2007 OK 27, 163 P.3d 512, FENT v. CONTINGENCY REVIEW BOARD
Discussed at Length
 2007 OK 52, 163 P.3d 540, TOMA v. TOMA
Discussed
 2007 OK 55, 164 P.3d 150, COX OKLAHOMA TELECOM, LLC v. STATE ex rel. OKLAHOMA CORPORATION COMM'N.
Discussed
 2008 OK 16, 179 P.3d 1265, IN THE MATTER OF THE ESTATE OF SPEERS
Discussed at Length
 2011 OK 26, 256 P.3d 45, IN THE MATTER OF THE ESTATE OF METZ
Discussed
 2012 OK 22, 278 P.3d 586, CPT ASSET BACKED CERTIFICATES, SERIES 2004-EC1 v. KHAM
Discussed
 2012 OK 24, 273 P.3d 62, J.P. MORGAN CHASE BANK N.A. v. ELDRIDGE
Discussed
 1976 OK 74, 550 P.2d 1320, ANDERSON v. MERRIOTT
Discussed
 1925 OK 816, 243 P. 955, 116 Okla. 140, COMMERCIAL INV. TRUST v. HARSHA
Discussed
 1981 OK 133, 637 P.2d 75, Miller v. First Nat. Bank & Trust Co.
Discussed at Length
 1982 OK 2, 639 P.2d 1233, Independent School Dist. No. 9 of Tulsa County v. Glass
Discussed
 1982 OK 67, 655 P.2d 544, Republic Underwriters Ins. Co. v. Fire Ins. Exchange
Discussed at Length
 1948 OK 81, 191 P.2d 921, 200 Okla. 198, DRAUGHON v. WRIGHT
Discussed
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 158, Several Contracts Taken Together
Discussed
Title 46. Mortgages
 Cite
Name
Level

 46 O.S. 5, Real Property Passing by Succession or Will
Discussed at Length
Title 58. Probate Procedure
 Cite
Name
Level

 58 O.S. 1255, Interest Taken Subject to Liens, Recorded Converyances, etc. - Lapse if Grantee Beneficiaries Predecease Record Owner - Condition if Joint Tenants with Right to Survivorship
Discussed at Length
 58 O.S. 1258, Deed in Conformity with Nontestamentary Transfer of Property Act
Cited
 58 O.S. 1, Probate Jurisdiction of District Court
Cited
 58 O.S. 333, Claims Barred When not Presented in Time - Exceptions
Discussed at Length
 58 O.S. 339, Suit on Rejected Claim
Cited
 58 O.S. 461, Provisions of the Will to Be Followed
Discussed at Length
Title 84. Wills and Succession
 Cite
Name
Level

 84 O.S. 151, Will Construed According to Testator's Intent
Cited
 84 O.S. 154, Several Testamentary Instruments Construed Together
Cited